UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WARNER BROS. ENTERTAINMENT, INC. and
J.K. ROWLING,

        Plaintiffs,

    -against-

RDR BOOKS and DOES 1-10,

        Defendants.

Case No.: 07-CV-9667 (RPP)

---

# MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFFS WARNER BROS. ENTERTAINMENT, INC. AND J.K. ROWLING FOR EXPEDITED DISCOVERY

Dale M. Cendali (DC 2676)
Johanna Schmitt (JS 2125)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY - 10036
Telephone:   (212) 326-2000
Facsimile:   (212) 326-2061

Attorneys for Plaintiffs Warner Bros.
Entertainment, Inc. and J.K. Rowling

## TABLE OF CONTENTS

                                                               **Page**

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND............................................................................................2

    The Harry Potter Books............................................................................................2

    The Harry Potter Films............................................................................................3

    Plaintiffs Learn of Defendant's Infringement .........................................................4

ARGUMENT.....................................................................................................................6

PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD BE GRANTED...........6

    1.     Applicable Standard ......................................................................................6

            a.     Under the Good Cause/Reasonableness Test Plaintiffs Are Entitled to Expedited Discovery.......................................................7

            b.     Plaintiffs Can Establish "Some Probability of Success on the Merits" Under the Notaro Standard..........................................7

            c.     Irreparable Injury...............................................................................10

            d.     Plaintiffs Can Show A Connection Between Expedited Discovery and the Avoidance of Irreparable Injury ......................10

            e.     The Injury That Plaintiffs Would Suffer Without Expedited Discovery is Greater Than That of Defendant If Expedited Relief Were Granted ...........................................................................11

CONCLUSION ................................................................................................................11

## TABLE OF AUTHORITIES

Page

**Cases**

ABKCO Music,
  96 F.3d at 66 ..................................................................................................10

Ayyash v. Bank Al-Madina,
  233 F.R.D. 325 (S.D.N.Y. 2005) (J. Lynch) ....................................................6

Behnam Jewelry Corp. v. Aron Basha Corp.,
  1997 U.S. Dist. LEXIS 15957, at *59 (S.D.N.Y. July 18, 1997) ....................6

Castle Rock Entertainment v. Carol Publishing Group,
  955 F. Supp. 260 (S.D.N.Y. 1997) ..................................................................8

Hasbro Inc. v. Lanard Toys, Ltd.,
  858 F.2d 70 (2d Cir. 1988) ............................................................................10

Horn Abbot, Ltd. v. Sarsaparilla, Ltd.,
  601 F. Supp. 360 (D. Ill. 1984) .......................................................................9

Notaro,
  95 F.R.D. at 405 ............................................................................................11

Paramount Pictures Corp. v. Carol Publishing Group,
  11 F.Supp.2d 329 (S.D.N.Y. 1998), aff'd, 181 F.3d 83 (2d Cir. 1999) ...........8

Standard Investment Chartered, Inc. v. NASD, Inc.,
  2007 U.S. Dist. LEXIS 27342 (S.D.N.Y. April 11, 2007) (J. Kram) .............6

Toho Co., Ltd. v. William Morrow and Co., Inc.,
  33 F. Supp. 2d 1206 (C.D. Cal. 1998) ............................................................9

Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.,
  996 F.2d 1366 (2d Cir. 1993) ..........................................................................8

Warner Bros. Inc. v. American Broad. Cos.,
  654 F.2d 204 (2d Cir. 1981) ............................................................................8

Westchester Media v. PRL USA Holdings, Inc.,
  214 F.3d 658 (5th Cir. 2000) ...........................................................................9

O'MELVENY & MYERS LLP
Dale M. Cendali (DC 2676)
Johanna Schmitt (JS 2125)
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC. and J.K. ROWLING,<br><br>Plaintiffs,<br><br>-against-<br><br>RDR BOOKS and DOES 1-10,<br><br>Defendants. | Case No. 07-CV-9667 (RPP)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY** |

### PRELIMINARY STATEMENT

Plaintiffs Warner Bros. Entertainment Inc. ("Warner Bros.") and J.K. Rowling ("Rowling") urgently seek the Court's assistance in obtaining very limited and targeted expedited discovery in advance of their proposed motion for a preliminary injunction. Plaintiffs filed a complaint yesterday for, *inter alia*, copyright infringement and trademark infringement because Defendant's proposed 400-page book, entitled the "Harry Potter Lexicon," (the "Infringing Book") is a wholesale misappropriation of the "fictional" facts, characters, places, potions, songs and spells that make up the *Harry Potter* universe. In addition, Defendant's

Infringing Book is being marketed in a misleading way, as even the proposed cover of the book fails to disclose that the work is unauthorized.

Plaintiffs are now moving for expedited discovery because Defendant has repeatedly refused to provide Plaintiffs with a copy of the manuscript and the definitive front and back cover design and also has adamantly refused to postpone publication. Thus, Plaintiffs seek this limited, expedited discovery, requesting that Defendant provide Plaintiffs with a copy of the manuscript and cover of the proposed book, as well as any marketing materials related to the book so that Plaintiffs can present to the Court a full and complete record on which to base its decision for preliminary injunction.1

## FACTUAL BACKGROUND

### The Harry Potter Books

The Harry Potter series of books (the "*Harry Potter* Books"), authored by Ms. Rowling, are a modern day publishing phenomenon and success story. The first book in the series, *Harry Potter and the Philosopher's Stone*, was published in the United Kingdom in June 1997 with a substantially identical version of the book published in the United States in September 1998 under the title *Harry Potter and the Sorcerer's Stone* (the title of the United States version is used herein to refer to both the original United Kingdom version and the United States version) and was met with wide success and critical acclaim. Declaration of Neil Blair dated November 1, 2007 (hereinafter "Blair Decl."), ¶ 2. That book was followed by six more hugely popular and successful books: *Harry Potter and the Chamber of Secrets* (1999), *Harry Potter and the Prisoner of Azkaban* (1999), *Harry Potter and the Goblet of Fire* (2000), *Harry Potter and the Order of the Phoenix* (2003), *Harry Potter and the Half-Blood Prince* (2005), and, finally, *Harry*

---

1 The limited discovery Plaintiffs seek is set forth in the Declaration of Dale Cendali, dated November 1, 2007.

*Potter and the Deathly Hallows* (2007). Id. at ¶ 3. It has been reported that, collectively, the *Harry Potter* Books, which have been translated into more than 65 languages, have sold well over 350 million copies worldwide. Id. at ¶ 4. Each of these books is the subject of a copyright registration in the United States. Id. at ¶ 2.

Ms. Rowling also has authored and published two companion books to the *Harry Potter* Books so far – *Quidditch Through the Ages and Fantastic Beasts and Where to Find Them* (the "Companion Books"). Id. at ¶ 5. Ms. Rowling generously donates royalties from the Companion Books to the charitable organization Comic Relief. Id. Ms. Rowling has repeatedly stated that she plans to create additional companion books and donate royalties to charitable organizations. Id. The two initial Companion Books she authored already have raised £15 million for charity. Id.

Ms. Rowling has developed a long-term strategy to preserve the integrity of the *Harry Potter* Books. Id. at ¶ 6. The key features of this strategy include limiting the number of licenses that are granted, the number of products that are made, and where they can be sold. Id. Thus, Rowling has never authorized anyone to do a *Harry Potter* companion book and in particular objects to her fictional world being hijacked so others can reap profit at the expense of charity from her work. Id. at ¶ 7.

### The Harry Potter Films

As a result of the popularity of the *Harry Potter* Books, Warner Bros. sought, and obtained the film rights from Ms. Rowling to the series. Declaration of Diane Nelson dated November 1, 2007 (hereinafter "Nelson Decl."), ¶ 2. To date, Warner Bros. has released five of the seven films (the "*Harry Potter* Films") including *Harry Potter and the Sorcerer's Stone* (2001), *Harry Potter and the Chamber of Secrets* (2002), *Harry Potter and the Prisoner of Azkaban* (2003), *Harry Potter and the Goblet of Fire* (2005), and *Harry Potter and the Order of*

3

*the Phoenix* (2007). Id. at ¶ 3. Each of these films is the subject of a copyright registration. Id. The sixth film, *Harry Potter and the Half-Blood Prince* is scheduled for a worldwide release in November, 2008 and production of the seventh, *Harry Potter and the Deathly Hallows* is confirmed, but a release date has not yet been set. Id. at ¶ 4. The five *Harry Potter* Films released to date represent the highest grossing film series of all time with over $4 billion in worldwide receipts. Id. at ¶ 5.

Pursuant to its agreement with Ms. Rowling, Warner Bros. owns trademark rights in *Harry Potter* and *Harry Potter*-related designations in connection with its film rights and ancillary merchandising projects (collectively, the "*Harry Potter* Marks"). Id. at ¶ 6. Warner Bros. has obtained numerous trademark registrations for *Harry Potter* Marks in the United States. Id.

**Plaintiffs Learn of Defendant's Infringement**

Ms. Rowling's representative first learned of the Infringing Book when he saw an advertisement on www.PublishersMarketplace.com announcing that RDR Books would be publishing the *Harry Potter Lexicon*, purportedly scheduled, at that time, for release in late October 2007. Blair Decl. ¶ 8., Ex. A. The ad listed the author as Steve Vander Ark, the editor of a free website located at www.hp-lexicon.com (the "*Lexicon Website*") and made clear that the book was intended to be the definitive *Harry Potter* encyclopedia totaling approximately 400 pages long. Id.

Based on the description in the PublishersMarketplace.com advertisement and being familiar with the content of the *Lexicon* Website, Ms. Rowling and her representative became concerned that the proposed book was simply an effort to trade off the success of the *Harry Potter* Books in violation of her rights and goals for the *Harry Potter* Books and Companion Books. Id. at ¶ 9. As a result, for over a month, first Ms. Rowling's representative and then later,

4

her outside counsel (as well as counsel for Warner Bros.) made repeated efforts to communicate with Defendant, requesting that Defendant cease and desist plans to publish the Infringing Book -- or at least postpone publication -- until the parties had a chance to discuss the situation and to provide Plaintiffs with a copy. Declaration of Dale Cendali dated November 1, 2007 (hereinafter "Cendali Decl."), ¶ 2. Plaintiffs' efforts were utterly rebuffed and Defendant merely stated that the Infringing Book was going to be a "printed version" of the *Lexicon* Website. Id. at ¶ 3.

Defendant's statement caused even greater concern as the *Lexicon* Website is replete with materials that infringe Plaintiffs' copyrights and trademark rights, containing, among other things, stills from the *Harry Potter* Films, wholesale appropriation of lyrics to songs contained in the *Harry Potter* Books as well as detailed plot summaries, lengthy quotes, extensive descriptions of the characters and blatant copying of potions, spells and other "fictional" facts that originated with the *Harry Potter* Series. Id. at ¶ 4.

In addition to the infringing content, upon information and belief, the Infringing Book is designed and will be marketed to mislead consumers into believing that it has been authorized, approved or licensed by Ms. Rowling and Warner Bros. The cover of the book apparently will simply say the words "*Harry Potter Lexicon*" in large letters and in a font reminiscent of the one used in other *Harry Potter* Works, without any kind of disclaimer. Id. at ¶ 7. The front cover of the Infringing Book (as it appears on the Defendant's Website) contains numerous other indicia from the *Harry Potter* Works, including a white owl similar to Harry's owl, Hedwig, and other magical objects in a room that could easily be mistaken for a dormitory in Gryffindor Tower. Id. at ¶ 8. The subtitle of the Infringing Book says only that it is "The most complete and amazing reference to the magical world of Harry Potter." Id. at ¶ 9.

Given RDR Books' continued unreasonable delaying tactics, inexplicable refusal to postpone publication while the parties resolve these issues, and its unwillingness to even provide Plaintiffs with a review copy of the Infringing Book or a manuscript, Plaintiffs therefore have no choice but to seek a preliminary injunction and request that the Court provide Plaintiffs with limited expedited discovery, namely 1) a copy of the Infringing Book or the current version of the manuscript and the last draft prior thereto; and (2) any advertising, marketing materials or marketing plans used or intended to be used in the connection with the Infringing Book.

## ARGUMENT

## PLAINTIFFS' REQUEST FOR EXPEDITED DISCOVERY SHOULD BE GRANTED

### 1. Applicable Standard

This Court has broad power to grant expedited discovery under Fed. R. Civ. P. 26(d); see also Behnam Jewelry Corp. v. Aron Basha Corp., 1997 U.S. Dist. LEXIS 15957, at *59 (S.D.N.Y. July 18, 1997) (granting expedited discovery to counterclaim plaintiff to "discover the full nature of each counterclaim defendant's infringing activities"). The traditional standard for obtaining expedited discovery is set forth in Notaro v. Koch, namely that a party must establish: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." 95 F.R.D. 403, 405 (S.D.N.Y. 1982). However, some judges in this district have applied the more flexible standard of reasonableness and good cause. See Standard Investment Chartered, Inc. v. NASD, Inc., 2007 U.S. Dist. LEXIS 27342 (S.D.N.Y. April 11, 2007) (J. Kram); Ayyash v. Bank Al-Madina, 233 F.R.D. 325 (S.D.N.Y. 2005) (J. Lynch) (noting that the Notaro standard mirrors the standard for preliminary injunction and therefore makes little sense when determining a request to expedite discovery in

6

order to prepare for a motion for preliminary injunction). Plaintiffs are entitled to expedited discovery under either standard.

   a. **Under the Good Cause/Reasonableness Test Plaintiffs Are Entitled to Expedited Discovery**

Plaintiffs have good cause to request expedited discovery as it is necessary to permit Plaintiffs to develop a full and appropriate evidentiary record for timely consideration by this Court of Plaintiffs' upcoming motion for preliminary injunctive relief. Defendant has refused outright to give Plaintiffs the materials it has sought, namely a copy of the Infringing Book or the latest manuscript, the proposed cover, and any advertising or marketing materials related thereto. Given the significance of the issues, it is extremely important that Plaintiffs have the opportunity to present to this Court a fully developed record, an opportunity it cannot have until it obtains this limited discovery of Defendant. The requested discovery will provide Plaintiffs with a fair opportunity to demonstrate to the Court more fully that Defendant has engaged in illegal behavior that will continue to damage Plaintiffs' rights in to their intellectual property.

In addition Plaintiffs' requests are reasonable. The discovery Plaintiffs seek is extremely narrow and does not place any significant burden on Defendant. Instead, Plaintiffs seek only limited information from Defendant in order to present a clear and accurate account of the claims at issue. Thus, under the good cause/reasonableness test, Plaintiffs should be granted expedited discovery.

   b. **Plaintiffs Can Establish "Some Probability of Success on the Merits" Under the Notaro Standard**

The facts, on their face, reveal that Plaintiffs have far greater than "_some_ probability of success on the merits" based on claims for both copyright infringement and trademark infringement. Notaro, 95 F.R.D. at 405 (emphasis added).

7

### i. Plaintiffs Can Show "Some Probability of Success" on their Copyright Infringement Claim

There can be no dispute but that Ms. Rowling is the valid copyright owner of the *Harry Potter* Books and Warner Bros. is the valid copyright owner of the *Harry Potter* Films. Nor can there be any dispute that Defendant had access to Plaintiffs copyrighted works, which is presumed where, as here, a work is world-renowned. See Warner Bros. Inc. v. American Broad. Cos., 654 F.2d 204, 208 (2d Cir. 1981) (access to Superman character is assumed based on character's worldwide popularity).

At Defendant's own admission, it is about to publish a 400-page "encyclopedia" of all things *Harry Potter* based on the *Lexicon* Website -- a website that is chock full of infringing material misappropriated from Plaintiffs, including detailed plot summaries, lyrics to entire songs, magic potion recipes, long passages from the *Harry Potter* Books, transcriptions of magic spells, character descriptions and screen shots from the *Harry Potter* Films. Cendali Decl. ¶ 4. The courts in this Circuit have made clear in similar cases that such conduct constitutes copyright infringement. See Paramount Pictures Corp. v. Carol Publishing Group, 11 F.Supp.2d 329 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir. 1999) (a book consisting of detailed plot synopses of the show *Star Trek*, character descriptions, and explanations of fictional alien species and technologies constituted copyright infringement); Castle Rock Entertainment v. Carol Publishing Group, 955 F. Supp. 260 (S.D.N.Y. 1997) (a book containing trivia questions about the *Seinfeld* television series constituted copyright infringement); Twin Peaks Productions, Inc. v. Publications Int'l, Ltd., 996 F.2d 1366 (2d Cir. 1993) (a book containing detailed plot summaries of *Twin Peaks* episodes constituted copyright infringement).

### ii. Plaintiffs Can Show "Some Probability of Success" on their Trademark Infringement Claim

Similarly, there is more than "some probability" that Plaintiffs can succeed on their trademark infringement claims. There is no disputing that Warner Bros. owns numerous trademark registrations for HARRY POTTER for a variety of goods and services including books and films. Based on Defendant's own description of the Infringing Book and the image appearing on the Defendant's own website in connection therewith, Defendant clearly intends to prominently feature the HARRY POTTER mark in such a way that it will give the mistaken impression to consumers, some of which will be children, that the Infringing Book is authorized when it is not. Defendant's book apparently will simply say the words "*Harry Potter Lexicon*" in large letters and in a font reminiscent of the one used in other *Harry Potter* Works. Cendali Decl. ¶ 7. The dominant feature of Defendant's title is HARRY POTTER and the addition of a descriptive word such as "Lexicon," which literally means "dictionary," does nothing to distinguish Defendant's use from the myriad other uses by Plaintiffs. The front cover of the Infringing Book contains numerous other indicia from the *Harry Potter* Works, which only adds to the likelihood of confusion.

Under similar circumstances, courts have found that this type of conduct constitutes trademark infringement. See e.g. Westchester Media v. PRL USA Holdings, Inc., 214 F.3d 658 (5th Cir. 2000) (magazine title violated plaintiff's trademark rights in POLO mark); Toho Co., Ltd. v. William Morrow and Co., Inc., 33 F. Supp. 2d 1206, 1211-13 (C.D. Cal. 1998) (finding trademark infringement where use of Plaintiff's Godzilla mark on Defendant's book caused consumer confusion as to source or sponsorship); Horn Abbot, Ltd. v. Sarsaparilla, Ltd., 601 F. Supp. 360 (D. Ill. 1984) (book about Trivial Pursuit game entitled "In Search of Trivial Pursuit" infringed plaintiff's trademark).

9

c.     **Irreparable Injury**

New York courts routinely hold that infringement of a trademark or copyright results in a presumption of irreparable injury. See, e.g., ABKCO Music, 96 F.3d at 66 (once a plaintiff demonstrates a prima facie case of copyright infringement, the court will presume irreparable harm); Hasbro Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988) ("[i]n a Lanham Act case a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm…"). As Plaintiffs have demonstrated some probability of success on the merits of its copyright and trademark infringement claims, irreparable injury may be presumed.

Moreover, one of the basic rights of a copyright holder is the right to control and authorize derivative works. Ms. Rowling has been careful about authorizing derivative works to preserve the integrity of the *Harry Potter* Books and also because she has indicated that she intends to write her own companion guides and donate the proceeds to charity. Defendant's conduct both undermines Ms. Rowling's rights in the *Harry Potter* Books and her efforts to create additional *Harry Potter* Companion Books for the benefit of charity.

d.     **Plaintiffs Can Show A Connection Between Expedited Discovery and the Avoidance of Irreparable Injury**

The discovery that Plaintiffs seek is directly tied to their motion for preliminary injunction, which is designed to prevent further irreparable harm to Plaintiffs. Defendants have refuse to provide the materials that Plaintiffs seek and, moreover, have refused to delay publication of the Infringing Book so that the parties could explore the issues involved in this dispute, thus creating the need for more urgent relief. Plaintiffs merely are seeking a copy of the Infringing Book or the latest manuscript, the proposed cover, and any advertising or marketing materials related thereto. These materials are at the heart of Plaintiffs copyright and trademark infringement claims and are necessary to present a full and accurate record to the Court.

Because Plaintiffs seek to avoid the above-demonstrated irreparable injury by bringing a motion for preliminary injunction in which the requested discovery being sought would play a significant part, there is without doubt "some connection between the expedited discovery and the avoidance of the irreparable injury." Notaro, 95 F.R.D. at 405.

        e.      **The Injury That Plaintiffs Would Suffer Without Expedited Discovery is Greater Than That of Defendant If Expedited Relief Were Granted**

The burden to defendant is minimal. The requested discovery is limited solely to the Infringing Book or the current version of the manuscript and the last draft prior thereto, its proposed cover and advertising or marketing plans developed in connection therewith. Such discovery is not likely to be voluminous and Defendant presumably would have this information readily available. Moreover, Defendant would have to participate in discovery on these issues in any event as the requests are literally at the heart of this case and therefore discoverable under Fed. R. Civ. P. 26.

On the other hand, Plaintiffs will suffer greatly in the absence of this relief. As explained above, Defendant is on the eve of publishing its Infringing Book despite all of Plaintiffs' efforts to communicate with Defendant about it and Plaintiffs are on the verge of having their intellectual property infringed and exploited without their consent. The expedited discovery thus is required to permit Plaintiffs to develop a full and appropriate evidentiary record for timely consideration by this Court of Plaintiffs' upcoming motion for preliminary injunctive relief. As such, the injury to Plaintiffs without this expedited discovery is overwhelmingly greater than that of Defendant if expedited discovery were granted.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the application for expedited discovery be granted.

Dated: November 2, 2007

Respectfully submitted:

*Dale Cendali*

Dale M. Cendali

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Plaintiffs*

12