UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

WARNER BROS. ENTERTAINMENT INC. and
J.K. ROWLING,

        Plaintiffs,

-against-

RDR BOOKS and DOES 1-10,

        Defendants.

------------------------------------- X

Case No. 07-CV-9667 (RPP)

## DECLARATION OF JERI JOHNSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Jeri Johnson, declare and state as follows:

1.     I am the Senior Tutor (Academic Dean) of, and Ashby Fellow and Lecturer in English at, Exeter College, University of Oxford. The corresponding role in the United States of a "Fellow and Lecturer" would be a professor, that is, a tenured faculty member who teaches and conducts research at the university level. I have been a Fellow and Lecturer for 17 years. At Exeter and Oxford, I teach English and American literature from 1800 to the present; my particular specialty is in twentieth-century literature, especially American, English and Irish modernism. I supervise doctoral research on twentieth-century literature in English, and on textual and bibliographical theory. In addition to my teaching responsibilities, I have edited recent editions of numerous books including James Joyce's <u>Ulysses</u>, <u>Dubliners</u>, and <u>A Portrait of the Artist as a Young Man</u> for Oxford University Press and Virginia Woolf's <u>The Years</u> for Penguin and have also published essays on James Joyce, Virginia Woolf, Sigmund Freud,

feminist theory, and textual theory. Since 2001, I have been Senior Tutor of the college, the role corresponding to Academic Dean or Dean of Faculty in a U. S. college or university. In this position, I am responsible for all academic matters of the College: appointment of all Fellows and Lecturers, tenure reviews for these, oversight of all academic matters, development and administration of academic policy. Since the early 1990s I have acted as an assessor of scholarly monographs for Oxford University Press and for Cambridge University Press. I have a Master of Arts and a Master of Philosophy in English Literature. Except for the facts stated on information and belief, all of the facts set forth herein are known to me personally, and if called as a witness, I could and would testify competently thereto.

2. I have read the Harry Potter Books. I also have thoroughly reviewed Defendant's proposed book, *The Harry Potter Lexicon* (the "Lexicon"). Based on a close reading of the manuscript, I have determined that the Lexicon could not reasonably be classified as a work of scholarship or of research as the term is commonly used in the field of scholarly publishing.

3. The Modern Language Association ("MLA") in the United States and the Research Assessment Exercise for Higher Education ("RAE") in the United Kingdom are the pre-eminent organizations for the assessment of scholarly work for the purposes of publication, and for appointment and promotion of scholars in the academy. The MLA's Style Manual and Guide to Scholarly Publishing sets forth the "gold standard" for writing, publishing and evaluating a work of scholarship or research in literature and literary studies in the United States. The RAE sets forth similar guidelines for the evaluation and assessment of scholarly research in the United Kingdom.

4. Both the MLA and the RAE guidelines repeatedly stipulate that, to qualify as scholarship or research, a work must possess some degree of originality or invention. It must

constitute an "original investigation;" it must "invent" or "generate . . . ideas leading to new or substantially improved insights." With respect to dictionaries in particular, in order to constitute scholarship, such a work must in itself make an original contribution to the "creation or development" of "the intellectual infrastructure" (the essential constituent parts) of the relevant language or discipline within which it is located: in this instance, it must illuminate our understanding of the elements of the discipline of "Harry Potter Studies," of the "language" that is "the Harry Potter Books." On the analogy of a dictionary of a particular language, a scholarly dictionary of the "language" Harry Potter would be required to lay bare its own underlying premises about the "grammar" of the language and to justify and articulate its own principles for the selection, definition and organization of its "parts of speech," its choice of illustration and example, its logic of etymological derivation. Only thus could it purport to make an original contribution to our understanding of the underlying structures and components of the language or discipline "Harry Potter."

5. The Lexicon fails to constitute a work of scholarship or research because it lacks any degree of originality or inventiveness, nor does it contribute in any original way to the creation, development or maintenance of the intellectual infrastructure (of the language or discipline of "Harry Potter") that is particularly necessary for this type of work. There is no information contained within the Lexicon that is the original work of its author or that is derived from any source other than the Harry Potter Books or the statements of J. K. Rowling. The terms listed in the Lexicon have simply been extracted from the Harry Potter Books, or from interviews with Rowling, or from individual elements on her own website: J K Rowling.com, and defined by paraphrasing or quoting descriptions directly out of the subject material. Mr. Vander Ark incorporates virtually no independent analysis of the Harry Potter Books. He engages in no

discussion of the themes, metaphors or literary devices that are present within the Series. The Lexicon remains silent on its logic of definition or etymology; its principle of organization is simply alphabetical, that of selection: don't select; include anything and everything. Overall, the Lexicon adds nothing new to the field with respect to the Harry Potter Books.

6. My conclusion that the Lexicon does not constitute a work of research or scholarship is based not only on my analysis of the Lexicon as a whole, but also on statements made by Steven Vander Ark on his website, hp-lexicon.org. On his site, Mr. Vander Ark describes his work as a catalogue of the Harry Potter "canon." He defines the "canon" as "Information which has come directly from J.K. Rowling in either written or spoken form," and explains that the Lexicon is "an attempt to catalog in a user-friendly way all the information Ms. Rowling has given us about the world she has created, the universe of Harry Potter."

7. Just as Mr. Vander Ark himself points out, it is evident that the information contained in the Lexicon is a mere catalogue of information wholly derived from Ms. Rowling's books, statements or website. The terms, people and places laid out alphabetically in the Lexicon are taken straight from Ms. Rowling's own original Harry Potter world. Such terms are defined using the fictitious facts that Ms. Rowling has invented in order to build the Harry Potter universe. Even those terms that have meaning outside of the Harry Potter universe are defined largely in terms of their meaning with respect to the Harry Potter Books. For example, when defining "Argentina," the Lexicon notes that this South American country's "Quidditch team reached the World Cup quarterfinals within the last century." The entry for "hair-care products" is: "Gilderoy Lockhart's secret ambition is 'to rid the world of evil and market his own line of hair care products.'" Even a word like "apparition" is defined wholly in terms of the Harry Potter Books, not as a ghost or phantom, but as "an advanced spell used by fully trained witches

and wizards to disappear from one place and appear almost instantly somewhere else . . . ."

8. It is also evident -- and in fact Mr. Vander Ark admits on his Lexicon website -- that the only sources that have been consulted in the process of preparing the Lexicon are the Harry Potter Books and Ms. Rowling.[1]

9. Further, one of the most creative and markedly original elements of the Harry Potter Books derives from the fertile "nominative" genius of J. K. Rowling: foremost among her creative talents is Rowling's gift for conceiving of new "things" and of generating for them names: names of characters, to be sure, but also of wizards, of potions, of fabulous beasts, of plants, of runes, of spells, of sweets, of statues and stairways, of games and teams, of orders and chambers and hallows. They proliferate, multiply, divide, exfoliate: Aramantula, Animagus, Parseltongue, Slytherin, sneakoscope, gulping Plimpies, polyjuice potion, time-turner, Nymphydora Tonks, Bertie Bott's Every Flavour Beans, Quidditch, Albus Percival Wulfric Brian Dumbledore and, yes, Harry Potter. Mr. Vander Ark's act of appropriating, then simply alphabetically arranging Ms. Rowling's technicolour nouns, of defining them in terms wholly derived from her work, is an exploitation that goes straight to the heart of Rowling's distinctive creative genius.

10. Thus, rather than being a work of scholarship or research, the Lexicon simply takes Ms. Rowling's intellectual "furniture," catalogues it through descriptions that have either been lifted or synthesized from Ms. Rowling, and rearranges it in unoriginal alphabetical order. There is nothing original or creative about organizing someone else's information alphabetically, and regardless of such rearranging, the fact remains that the furniture still is Ms. Rowling's.

---

[1] I understand that representative pages from the Lexicon Website describing the sources of information used therein are annexed to the Declaration of Melanie Bradley.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 10, 2008, at Oxford, England.

Respectfully submitted,

By: _____
Jeri Johnson