UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

WARNER BROS. ENTERTAINMENT INC. and
J.K. ROWLING,

           Plaintiffs,

-against-

RDR BOOKS and DOES 1-10,

           Defendants.

------------------------------------- X

Case No. 07-CV-9667 (RPP)

## DECLARATION OF DALE M. CENDALI IN SUPPORT
## OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Dale M. Cendali, declare and state as follows:

1. I am a partner in the law firm of O'Melveny & Myers LLP, counsel for Warner Brothers Entertainment, Inc. ("Warner Bros.") and J.K. Rowling in this action. Except the facts stated on information and belief, all of the facts set forth herein are known to me personally, and if called as a witness, I could and would testify competently thereto.

2. Since September 18, 2007, acting as counsel for Ms. Rowling and Warner Bros., O'Melveny & Myers LLP has made repeated efforts to communicate with Defendant, requesting that Defendant cease and desist plans to publish the book by Steven Vander Ark, entitled *The Harry Potter Lexicon* (the "Infringing Book") -- or at least postpone publication -- until the parties had a chance to discuss the situation. An advertisement on www.PublishersMarketplace.com announced that RDR Books would be publishing *The Harry Potter Lexicon*, with a release date in late October 2007.

3. On September 18, 2007, I caused a letter to be sent to RDR Books and Mr. Vander Ark notifying them that publication of the *Harry Potter Lexicon* would infringe Ms. Rowling's copyrights and mislead consumers to believe that it had been authorized by Ms. Rowling and Warner Bros. The letter requested that RDR Books cease its efforts to publish the book, forward our letter to parties that had purchased foreign rights to the book, and identify those parties so that we could contact them directly. Attached as **Exhibit A** is a true and accurate copy of the September 18th letter to RDR Books.

4. In response, RDR Books replied cursorily on behalf of both itself and Mr. Vander Ark, advising "[i]t is our intention to thoroughly study the various issues you have raised and discuss them with our legal advisers." Attached as **Exhibit B** is a true and accurate copy of the September 19th email from RDR Books.

5. After two weeks of hearing nothing, on October 3, 2007, we wrote another letter to RDR Books emphasizing Ms. Rowling's and Warner Bros.' concerns about the impending publication of the *Harry Potter Lexicon*. Attached as **Exhibit C** is a true and accurate copy of the October 3rd letter to RDR Books.

6. Later that day, we received an email response from Mr. Rapoport requesting additional time to respond due to a family emergency. Attached as **Exhibit D** is a true and accurate copy of the October 3rd email from RDR Books.

7. Sympathetic to Mr. Rapoport's situation, we agreed to honor his request for more time. Attached as **Exhibit E** is a true and accurate copy of the October 3rd email to RDR Books.

8. Nonetheless, one week later, on October 11, 2007, Mr. Rapoport, who had previously stated that a family emergency prevented him from substantively responding to our

letters, sent my client, Warner Bros., a cease and desist letter claiming that a Harry Potter timeline in one of Warner Bros.' DVD packages allegedly infringed Mr. Vander Ark's copyrights. Warner Bros. responded that it would investigate his allegations and would respond shortly. Warner Bros. also renewed its request to see a copy of *The Harry Potter Lexicon*, to which Mr. Rapoport responded: "If you do not know how to print that material [from Mr. Vander Ark's website] please ask one of your people to show you how."

9. Still hearing nothing since October 3, 2007 from RDR Books in response to our cease and desist letter and aware that Mr. Rapoport was back at work, as he had been able to send a cease and desist letter to Warner Bros. on October 11, 2007, we once against attempted to contact RDR Books. On October 19, 2007, we wrote a third letter to RDR Books, again asking for a substantive response to Ms. Rowling's and Warner Bros.' concerns about *The Harry Potter Lexicon*. Attached as **Exhibit F** is a true and accurate copy of the October 19th letter to RDR Books.

10. RDR Books, as it had before, responded only that "[w]e are looking in to your allegations and will get back to you with our response." Attached as **Exhibit G** is a true and accurate copy of the October 21st email from RDR Books.

11. Three days later we learned upon information and belief that on or around October 23, 2007 RDR Books had offered the publishing rights for the Infringing Book in Germany to Random House and in Taiwan to Crown Publishing. Consequently, on October 24, 2007, we wrote yet a fourth letter to RDR Books expressing our grave concern about its recent behavior and requesting confirmation that it would not publish the *Harry Potter Lexicon* until making a good faith effort to resolve this matter. We also renewed our request for an advance copy of the book to facilitate our discussions. Because we were concerned

about RDR Books' previous conduct of delaying its response to get the *Harry Potter Lexicon* closer to publication, we set a reasonable deadline for a response of Monday, October 29, 2007. Attached as **Exhibit H** is a true and accurate copy of the October 24th letter to RDR Books.

12. RDR Books sent a brief email response on October 24, 2007, stating that Plaintiffs' "unwarranted" objections were not appreciated, and stating that *The Harry Potter Lexicon* book was a "print version" of Mr. Vander Ark's website, located at www.hp-lexicon.org. Attached as **Exhibit I** is a true and accurate copy of the October 24th email from RDR Books.

13. In one last effort to avoid the need for litigation, my colleague, Johanna Schmitt, and I called Mr. Rapoport on October 31, 2007 and gave him yet another chance to agree to cease publication. Once again, we asked for a copy of the manuscript and proposed cover or, at the very least, that RDR Books postpone publication so that we would have additional time to resolve the matter. Mr. Rapoport would not agree to any of our requests. I accordingly informed him that we would thus have no choice but to file suit against RDR Books. Later that day, we filed this lawsuit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 15, 2008, at New York, New York.

Respectfully submitted,

By: _____
Dale Cendali