UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
WARNER BROS. ENTERTAINMENT INC. and
J.K. ROWLING,

        Plaintiffs,

        -against-                                 Case No. 07-CV-9667 (RPP)

RDR BOOKS and DOES 1-10,

        Defendants.
------------------------------------- X

**DECLARATION OF MELANIE BRADLEY IN SUPPORT
OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Melanie Bradley, declare and state as follows:

1.     I am a counsel in the law firm of O'Melveny & Myers LLP, counsel for Warner Bros. Entertainment, Inc. ("Warner Bros.") and J.K. Rowling in this action. Except for the facts stated on information and belief, all of the facts set forth herein are known to me personally, and if called as a witness, I could and would testify competently thereto.

2.     I have reviewed the "Harry Potter Lexicon" website located at www.hp-lexicon.org (the "Lexicon Website") and the Harry Potter Lexicon book (the "Infringing Book") in connection with the instant litigation.

**The Lexicon Website and Book**

3.     The website is divided into many areas, including "News" containing updates on the films, fan events, Ms. Rowling's announcements and activities, "Essays" containing nonfiction pieces analyzing issues in and surrounding the *Harry Potter* books, and "Forums"

where visitors can discuss *Harry Potter* in an interactive dialogue. True and correct copies of illustrative printouts from the Lexicon Website are attached hereto as **Exhibit A**.

4. None of these features appear in the manuscript that RDR Books has provided Plaintiffs in connection with this litigation. True and correct copies of illustrative pages from the Infringing Book are attached hereto as **Exhibit B.**

5. The Lexicon Website also contains indexes of the people, places and things from the seven *Harry Potter* books and two companion guides which Ms. Rowling has authored (hereinafter the "*Harry Potter* Works"). These indexes are arranged by topic including "Encyclopedia of Spells," "The Bestiary," and "Which Wizard: Who's Who in the Wizarding World. Within these topical listings are descriptions of the people, places and/or things taken from the *Harry* Potter Works. True and correct copies of illustrative printouts from the Lexicon Website showing these topical listings are attached hereto as **Exhibit C**.

6. It is these descriptions, or revised versions thereof, that comprise the Infringing Book. However, in the Infringing Book the entries are not arranged by topic and do not feature any graphics or art, but instead are simple text entries arranged in alphabetical order. See **Exhibit B**.

7. In the website's frequently asked questions ("FAQs") and on its "About The Harry Potter Lexicon" pages, Steven Vander Ark, the owner of the Lexicon Website and author of the Infringing Book, describes himself as a "fan" of the series and indicates that the origin for virtually all of the material described in paragraph 5 is the *Harry Potter* Works. Mr. Vander Ark considers the *Harry Potter* Works as "canon" and any source not directly attributable to Ms. Rowling as unreliable. Mr. Vander Ark also indicates in the "About the Harry Potter Lexicon" page that he took notes about each book as he read them and that these notes were then turned

2

into the materials described in paragraph 5. True and correct copies of the "FAQs" and "About the Harry Potter Lexicon" section of the Lexicon Website are attached hereto as **Exhibits D and E** respectively.

### Awareness of Harm

8. I understand that Defendant is contending that publication of the Infringing Book will not harm sales of Ms. Rowling's works or the *Harry Potter* companion guide she herself intends to write. While the Lexicon Website contains all of the information from the seven *Harry Potter* books and the Infringing Book apparently will as well, the Website purportedly does not include all of the information contained in the Fantastic Beasts and Where to Find Them companion guide because "Rowling wrote that book for charity and if we reproduced all of that information here on the Lexicon it would take away from sales of the book." On June 27, 2007, Mr. Vander Ark appears to have posted an entry in the "What's New" section of the Website, explaining that,

> The book *Fantastic Bests and Where to Find Them* is now completely entered. As with the Bestiary in the Lexicon, we have intentionally NOT included all information about each beast so that our site doesn't discourage anyone from buying the book itself.

A true and correct copy of printouts of the main page from the Lexicon Website's "Bestiary" section and from the "What's New" section are attached hereto as **Exhibit F**.

### Defendant and Vander Ark's Stance re: Copyright Infringement

9. While the Infringing Book is taken directly from Ms. Rowling original works of authorship, Mr. Vander Ark, as owner of the Lexicon Website, aggressively protects what he believes to be his own copyrights and prohibits any copying of his Lexicon Website. See **Exhibit D**. As the Lexicon Website states:

> "…I understand that you'd really love to have the kind of quality work you find in the Lexicon for your own site. However, I don't give permission for people to just copy my work for their own use. Not only is that illegal, since everything in the Lexicon is copyrighted, it's also just plain wrong."

10. Not only does Mr. Vander Ark not allow copying of any of the material he claims as his own, he does not allow "framing" -- a process by which another website can show the Lexicon Website as if it were a part of that other website - or linking directly to the artwork or maps on the Lexicon Website. See **Exhibit D**. As the Lexicon Website states:

> "Please don't frame my site, by the way. The only site I've given permission to for framing is Ask Jeeves. If you're not them, don't frame my site, simple as that. Framing someone else's site makes it look their site is part of yours, and that's illegal copying. Also, don't use artwork or maps from the Lexicon on your pages by linking to them directly, so they show up on your site. That's also the same as copying them."

11. In fact, the Lexicon Website is set up in a manner to dissuade and prevent people from highlighting and copying text directly off of the site. If a user even attempts to highlight and copy any of the materials included on the Lexicon Website utilizing the "right click" function on their mouse, a copyright notice pops up. A true and correct copy of the "screen shot" showing the copyright notice is attached hereto as **Exhibit G**.

12. Similarly, Defendant RDR Books, asserted rights in and to a timeline that Plaintiff Warner Bros. included in its DVD releases that is based entirely on Ms. Rowling's fictional facts. Attached as **Exhibit H** is a true and correct copy of a cease and desist e-mail that Defendant sent to Warner Bros which states:

> "It has come to our attention that the "Hogwarts Timeline" included in the extra features of the Warner Bros. DVD versions of Harry Potter and the Chamber of Secrets, Harry Potter and The Prisoner of Azkaban, and Harry Potter and the Goblet of Fire was copied directly from the Harry Potter Lexicon website without Mr. Vander Ark's permission. We have been given to understand that the timeline will also be incorporated in the special features of the forthcoming DVD version

4

of Harry Potter and the Order of the Phoenix, announced for December 2007 release....No such timeline is contained in any of J.K. Rowling's Harry Potter novels. Mr. Vander Ark published details that were found nowhere else. This timeline, like all the material on the 1,000-plus-page Harry Potter Lexicon, is the original work of Mr. Vander Ark and his elite team of academic scholars, literary critics and reference librarians. It is copyrighted 2001 through 2007 by The Harry Potter Lexicon"

Plaintiffs in this action take the position that (a) Defendant has no copyright in the timeline appearing on the Lexicon Website, which is derived entirely from Ms. Rowling's books; and (b) even if Defendant did own a copyright in any such timeline, Warner Bros.' DVD timeline does not infringe it

### Knowledge of Potential Copyright Issues

13.     Ms. Rowling made numerous statements in interviews beginning in at least as early as 2001 indicating that she intended to author a definitive Harry Potter encyclopedia upon completion of the final Harry Potter book. Representative examples of articles in which Ms. Rowling is quoted as intending to author such a book are attached hereto as **Exhibit I**.

14.     Defendant apparently was aware of potential issues of infringement with respect to the Infringing Book. I understand that it is typical in the publishing industry for the author to indemnify the publisher for any claims of copyright infringement. Although Mr. Vander Ark did indemnify Defendant generally for claims of infringement, Defendant specifically indemnified Mr. Vander Ark against any copyright infringement claims brought by Ms. Rowling. Attached as **Exhibit J** is a true and correct copy of a letter agreement dated August 23, 2007 between Defendant and Vander Ark in which Defendant indemnifies Mr. Vander Ark from copyright infringement claims brought by Ms. Rowling.

15.     Defendant apparently also took pains to ensure that neither Ms. Rowling nor any of its publishers of the Harry Potter Books would learn of the publication of the Infringing Book

5

prior to its publication. In fact, Defendant instructed one or more of their foreign publishing agents to avoid marketing the Infringing Book to any of Ms. Rowling's publishers. True and correct copies of two emails from Roger Rapoport of RDR Books to a foreign publishing agent instructing them to avoid Ms. Rowling's publisher's are hereto as **Exhibit K**.

### Defendant's Efforts to Market the Infringing Book

16. I understand that Defendant is taking the position that the infringing book is a work of scholarship or research. However, the marketing materials and emails Defendant produced in connection with the instant litigation indicates that Defendant was mass marketing this book domestically to children's bookstores and children's book buyers at larger general bookstores. A true and correct copy of an email in which Defendant's marketing person is instructed to contact children's bookstores and book buyers about the Infringing Book is attached hereto as **Exhibit L**.

17. Ms. Rowling's name and a quote she made in connection with the Lexicon Website are prominently featured in marketing materials and utilized in communications that Defendant prepared and sent to numerous publishers and booksellers in connection with its efforts to market the Infringing Book. True and correct copies of Defendant's marketing materials and communications are attached hereto as **Exhibit M**.

18. According to the FAQs on the Lexicon Website, Mr. Vander Ark claims that "[t]he Lexicon was created and is edited, written, and maintained primarily by one person, me." See **Exhibit D**. However, in an email to a book publisher, Defendant claims that the Infringing Book is written by a group of "20 academic scholars and reference experts" of which Mr. Vander Ark is one. A true and correct copy of an email string between Defendant and its publisher in Canada are attached hereto as **Exhibit N**.

6

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 15, 2008, at New York, New York.

Respectfully submitted,

By: ___/s/ Melanie Bradley___
Melanie Bradley