UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

WARNER BROS. ENTERTAINMENT INC. and
J.K. ROWLING,

        Plaintiffs,

-against-

RDR BOOKS and DOES 1-10,

        Defendants.

------------------------------------- X

Case No. 07-CV-9667 (RPP)

## SUPPLEMENTARY DECLARATION OF JERI JOHNSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Jeri Johnson, declare and state as follows:

1. I am the Senior Tutor (Academic Dean) of, and Ashby Fellow and Lecturer in English at, Exeter College, University of Oxford. Except for the facts stated on information and belief, all of the facts set forth herein are known to me personally, and if called as a witness, I could and would testify competently thereto.

2. I have closely reviewed Defendant's papers in support of its Opposition to Plaintiffs' Motion for Preliminary Injunction. Based on my review, it appears that Defendant does not directly challenge any of the points that I previously made regarding the *Harry Potter Lexicon* (the "*Lexicon*"). As I have stated, the *Lexicon* is not a work of scholarship as this term is commonly understood in the field. Defendant's expert, Janet Sorensen does not appear to disagree with this assessment.

3. In her declaration, Dr. Sorensen discusses the historical importance of lexicons

and reader's guides, however, this issue is irrelevant as to whether or not the *Lexicon* constitutes a work of scholarship or research. No one would deny that reader's guides can be useful or that there is a market for such works. What is relevant, however, is that the *Lexicon* is not original or inventive, nor does it meet the standards for scholarship as set by the Modern Language Association in the U.S. or the Research Assessment Exercise for Higher Education in the U.K. In addition, it fails to provide real critical commentary to illuminate the reader's understanding of the language of the Harry Potter Books. Therefore, the *Lexicon* does not qualify as a work of scholarship or research.

4. I note that Dr. Sorensen stops short of proclaiming the *Lexicon* a work of scholarship, stating only that the *Lexicon* "*move[s] into the territory* of literary analysis" and admitting that these "interpretive moves are *occasional*" and are "*not the chief point* of the Lexicon." Sorensen Decl. at ¶¶ 30, 32 (emphasis added).

5. Dr. Sorensen points to several other reader's guides that have been published as some sort of justification for the *Lexicon's* publication, however, these books are easily distinguishable from the *Lexicon*. First, Dr. Sorensen points to guides that are based on public domain material such as Shakespeare. Several of the other books that Dr. Sorensen points to, such as *Pamela Illustrated, J.R.R. Tolkien, Master of the Rings: A Definitive Guide*, and *The Chronicles of Narnia: Beyond the Wardrobe: The Official Guide to Narnia*, were written either by the author, in conjunction with the author or with the author's consent. As for the other books that Dr. Sorensen cites, it is impossible to know what type of arrangements the copyright owners had with respect to these works and whether or not they were published with the permission of the author. Moreover, many of these works, such as *The People's Guide to J.R.R. Tolkien* by Erica Challis, consist of commentary and analysis and, therefore, unlike the *Lexicon*, actually do

2

appear to constitute scholarship.

6. In fact, a line by line review of the *Lexicon* reveals that out of the 2,437 entries, 2,034 entries simply lift information straight out of the Harry Potter Books.

7. Some entries that masquerade as commentary in the *Lexicon* merely make the most basic of observations. Take, for example, the entry for "Snitch" to which Dr. Sorensen refers in her declaration. Mr. Vander Ark derives the definition and properties of a "Snitch" directly from the Harry Potter Book, including that "a Snitch has flesh memory so it can identify the first Seeker to touch it in the event of a disputed catch." Mr. Vander Ark's sole "contribution" to this entry is to note that "Seekers can't wear gloves." This is not interpretation or groundbreaking scholarship, but rather a statement of the obvious. Similarly, the entry for "Babbling Curse" states that the "exact effect [is] not mentioned, but one can assume it causes the victim to babble." The entry for "Abyssinia" states that it is "presumably the home of the Abyssinian Shrivelfig" and the entry for "Bandon" states that it is "presumably the home of the Bandon Banshee."

8. On other occasions, Mr. Vander Ark merely adds an adverb to a description wholly derived from the Harry Potter Books, including "unfortunately," "sadly," "probably," "possibly" and "not surprisingly." These vie for space with proliferating synonyms for the author's ignorance: "it's unclear" ("Undetectable Extension Charm" entry); "[it's] anyone's guess" ("Mr. and Mrs. Granger" entry); "it's hard to know" ("Stinging Hex" entry); "[it] is unknown" ("Sorcerer's Saucepot" and "Snape" entries). Or we get weak hypothesis: "they were not exactly" ("Snape's Office" entry) or "this may have been" ("Gregorovitch" entry). Such comments occur throughout the *Lexicon*. This is not "scholarship." It is not "creative" or "original" or "research" or "commentary." It is the work of one who collates everything he finds

3

in the rich Potterian universe, and who must include it all in his list of names, even if he has no idea what it means.

9. There are also occasional entries that do nothing but illustrate the author's particular brand of facetiousness. For example, in the entry for "parchment" that Mr. Vander Ark mentions in his declaration, he states "with the rate they go through parchment in the wizarding world, someone must be raising and skinning a lot of sheep." Similar examples include: (a) "junk shop": "A shop in Diagon Alley filled with, well, junk"; (b) "horned toads": "Neville once had to disembowel an entire barrel full of horned toads...[p]oor Neville had quite an evening, one would guess"; and (c) "decoy detonators": "emit a loud bang and pour out acrid smoke" which "reminds [the author of the *Lexicon*] of an old greenish-gold AMC Gremlin [he] owned back in the 1970s." This is not interpretation; it is self-indulgent weak waggishness, tedious jocularity. If this is meant to amuse young children, it is condescending in the extreme. Ms. Rowling, on the other hand, never ever condescends to her young readers, and they have responded with utter devotion. Those readers deserve far better than this.

10. In an attempt to identify some value in the proposed *Lexicon*, Dr. Sorensen points to the etymological information that it contains. Such etymologies, however, are sprinkled sporadically and rarely throughout the *Lexicon* and clearly are an insignificant part of its content. They also reflect scant evidence of scholarship, as, among other things, they are often wrong.

11. For example, the Latin etymologies show no real linguistic understanding. Instead, they bear all the signs of someone having scavenged about, sometimes through a dictionary of a language he seems not to understand, for the likeliest synonym. These etymologies are presented irregularly and in many cases are simply erroneous. Two such erroneous entries can be found in the declaration of Dr. Sorensen. The entry for "colloportus" describes the word as having

4

derived from the Latin "*colligo*, to bind together" and "*portus*, door," however the term "portus" normally is translated as "harbor," rarely as "entrance." "Porta," now, that might well give you "door." Moreover, "Fenrir" is not "the gigantic wolf of the God Loki," but a gigantic wolf, *son* of Loki.

12. Errors proliferate throughout the remainder of these sporadic entries: "to drive out" is not "expelo" but "expello"; the source of "Deleterius" is not "deleterius" Latin; it is "delere" Latin: "to destroy, eradicate." "Anapneo" does not mean simply "breathe" but "breathe again" (from "ana" (again) + "pne-ein" (to breathe)(*OED*)), as in "recover breath"; hence it is used when someone is choking. Under "Animagi" we find "animal" Latin "animal" + "magus" Pers[ian] "magic user"; but the word "magus" in Persian meant "a wise man," not a magician; it's the Romans who took up the word and applied it to a magician (*OED* 'magus').

13. Despite its obsessive listing of seemingly everything, actual or figment, in the world of Harry Potter, the *Lexicon* is oddly etymologically silent at times: there is no etymology for "Arithmancy," e.g., or for "Aurors," both of which, though Greek, could be easily discerned by the truly devoted scavenger, and both of which would "illuminate" the meanings of these words for young readers. But the *Lexicon* is ready to provide (sometimes blatantly incorrect) Latin etymologies. Nor is any mention made of "Gog and Magog" in the *Lexicon*'s entry for "Aragog," despite the giant spider's wife being named "Masog." Leaving aside the Biblical allusion here, in English folklore, "Gog and Magog" play important roles as the defenders of the City of London, as witnessed by their giant effigies being carried every year in the Lord Mayor's parade, a rich, explicitly British allusion.[6] No etymology is provided for the "Gob" of "Gobstones," the game "something like marbles, in which the stones spit disgusting liquid at the

---

[6] See http://www.lordmayorsshow.org/visitors/procession/gogmagog (accessed 22 Feb 2008).

5

opposing player when they lose a point." But the *OED* does: "Gob": "a lump, clot of some slimy substance," or "a mouth" (*OED*, "gob" noun 1 and noun 2). Providing an etymology here would surely "add to both the comprehension and enjoyment of readers unfamiliar with British" English, as Professor Sorenson remarks in another context. Sorensen Decl. at ¶ 21. And so it goes.

14. Further, the *Lexicon* fails to follow the first rule of scholarly research: full and proper citation of one's sources. Mr. Vander Ark claims in his declaration that he has referenced several outside sources, including *Brewer's Dictionary of Phrase and Fable*, *Bullfinch's Mythology*, *The Field Guide to the Little People*; however, none of these works are referred to or mentioned in the *Lexicon*. Moreover, none of these works is listed in the bibliography of sources that Mr. Vander Ark has drafted for the *Lexicon*, which states to the contrary that "all of the information in the Harry Potter Lexicon comes from J.K. Rowling." Thus, to the extent that Mr. Vander Ark has included information in the *Lexicon* that he has derived from these sources, he has not provided appropriate attributions to any of them.

15. The *Lexicon* tells us that "smarmy" is "English for 'revealing or marked by a smug, ingratiating, or false statement, or false earnestness," but no source is given for the quoted definition. It comes, verbatim, from *Merriam-Webster's Online Dictionary*: "smarmy" "revealing or marked by a smug, ingratiating, or false earnestness."[9] Similarly, the entry for "Heinrich Cornelius Agrippa Von Nettesheim" is quoted virtually verbatim from *Encyclopedia Brittanica online*: the *Lexicon*: "In his book *De Occulta Philosophia* (1531), Agrippa encouraged the study of magic, explaining the world in terms of cabalistic analyses of Hebrew letters and Pythagorean numerology; he believed that magic was the best means to know God and nature.'"

---

[9] http://www.merriam-webster.com/dictionary/smarmy (accessed 22 February 2008).

*Encyclopedia Brittanica*: "In [*De Occulta Philosophia*] he explained the world in terms of cabalistic analyses of Hebrew letters and Pythagorean numerology and acclaimed magic as the best means to know God and nature."[10] This is not scholarship. Scholarship is marked by full citation of all of one's sources. On the few occasions that the *Lexicon* attempts to provide some real information, it invariably comes from other authoritative, unattributed sources.

16. Of course there also are long character entries — on "Severus Snape" or "Voldemort" or "Albus Percival Wulfric Brian Dumbledore" or "Hermione Granger" — which retell their whole stories, but pass virtually unsourced though clearly derived from the Harry Potter books.

17. The compilers of the *Oxford English Dictionary*, of *Bantam's Latin-English Dictionary*, of the *Columbia Encyclopedia*, of *Merriam-Webster's Dictionary*, of the *Encyclopedia Brittanica* were scholars engaged in original research: the author of the *Lexicon* parasitically uses these sources, usually unacknowledged, to glean his information. Like a magpie — "A person who collects or hoards objects, information, etc., esp. indiscriminately; an acquisitive or eclectic person" (*OED*) — he plucks and gathers from others' scholarly works to produce the appearance of "scholarship." On closer inspection, the illusion evaporates.

18. The single area covered by the *Lexicon* that might reasonably be said to offer some form of research is its listing of "Flints": those "honest-to-goodness error[s] in the books" called "flints" "after Marcus Flint, the Slytherin Quidditch captain who JKR inadvertently included in one book too many, making him an 'eighth year' student." But as the *Lexicon* itself admits, "Remarkably few genuine flints exist." As a result, "flints" represent a tiny, virtually unnoticeable handful of the entries in the *Lexicon*.

---

[10]http://www.britannica.com/eb/article-9004088/Heinrich-Cornelius-Agrippa-von-Nettesheim (accessed 21 Feb 2008)

7

19. Nothing that Defendant has presented in its papers changes the fact that the *Lexicon* merely rearranges Ms. Rowling's "intellectual furniture." The entries do not add a new layer of meaning to the Harry Potter Books. Rather, the *Lexicon* lifts the imaginative terms that make up the Harry Potter universe from the Harry Potter Books and defines them using the fictitious facts invented by Ms. Rowling. Any critical interpretation of these terms is negligible at best, and often wrong. All the *Lexicon* does do is contort Ms. Rowling's magical world and arrange it into an alphabetical list. This does not make the *Lexicon* original, nor does it make it a work of scholarship.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 26, 2008, at Oxford, England.

Respectfully submitted,

By: _____
Jeri Johnson