UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

WARNER BROS. ENTERTAINMENT INC. and
J.K. ROWLING,

        Plaintiffs,

    -against-

RDR BOOKS and DOES 1-10,

        Defendants.

------------------------------------ X

Case No. 07-CV-9667 (RPP)

## SUPPLEMENTAL DECLARATION OF SUZANNE MURPHY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

I, Suzanne Murphy, declare and state as follows:

1. I am the Vice President, Publisher, Trade Publishing and Marketing at Scholastic Inc. ("Scholastic"), the publisher of the *Harry Potter* books in the United States. Except for the facts stated on information and belief, all of the facts set forth herein are known to me personally, and if called as a witness, I could and would testify competently thereto.

2. I have read the Memorandum of Law and some supporting documentation submitted by RDR Books ("RDR") in opposition to Plaintiffs' Motion for Preliminary Injunction and wish to clarify several key points.

3. RDR contends that Ms. Rowling would not suffer any lost sales as a result of the publication of the Infringing Book. For this argument, RDR apparently relies on Mr. Vander Ark's presumption that "Harry Potter fans" would buy both the *Harry Potter* Lexicon (the "Infringing Book") and any encyclopedia that Ms. Rowling publishes irrespective of which is

published first. However, RDR misunderstands the market. While there are hardcore *Harry Potter* fans who might (if they had the money) purchase everything that Ms. Rowling writes, as sales of the *Harry Potter* books attest, the series appeals to a much broader group of consumers which includes children and their parents. Unlike their more devoted counterparts, these general consumers may not feel the need to have two *Harry Potter* encyclopedias. For a significant segment of the general book consuming market, if they buy the Infringing Book, when presented with a later opportunity to purchase Ms. Rowling's encyclopedia, they will decline as their perspective will be that they "already bought one." As a result, if the Infringing Book is allowed to be published it will usurp a key segment of Ms. Rowling's market for her book and would result in diminished sales of her book that cannot easily be quantified.

4. RDR appears to have had some awareness that publication of the Infringing Book would harm sales of Ms. Rowling's planned encyclopedia as indicated in Exhibits annexed to the Declaration of Melanie Bradley. These Exhibits indicate that Mr. Vander Ark refrained from including the full list of entries from Ms. Rowling's companion guide *Fantastic Beasts and Where to Find Them* on his *Lexicon* website because "it would take away sales of the book." By the same logic, a definitive *Harry Potter* guide that compiles entries from the entire Harry Potter series, companion guides, and other works by Ms. Rowling, would certainly take away from sales of Ms. Rowling's own *Harry Potter* encyclopedia.

5. In my prior declaration, I indicated that were RDR Books to publish the Infringing Book, it would damage the market for Ms. Rowling's planned encyclopedia partially because of the loss of the inherent value and marketing advantages of being the first to publish. RDR does not dispute that these advantages exist, but instead tries to argue that even were they to publish, because other people already published books, the harm has already occurred.

Obviously, this is a tacit acknowledgement of the market advantages and harm, but also is based on an inaccurate and misleading assessment of those books and of the state of the market for a "complete and definitive" *Harry Potter* guide as I describe below.

6. Moreover, having reviewed RDR's marketing materials, both RDR and Mr. Vander Ark have taken the very opposite position concerning the nature of the Infringing Book than they now do in RDR's papers. Far from being just one of many, RDR claims in its marketing materials and emails that the Infringing Book is the *first* and *only* comprehensive guide to the *Harry Potter* world containing information from all seven *Harry Potter* books. In an email to a Canadian publisher annexed to the Declaration of Melanie Bradley, RDR stated:

> "..there is no other Harry Potter reference book hitting the market that is in any way similar to what we are doing. Other books like the Idiot[s] Guide to Harry Potter are junk. Our book is written by 20 academic scholars and reference experts. This is *the only complete reference work* based on the number one Harry Potter website in the world…It is also the *first complete reference book on the series*…" (emphasis added).

As RDR is pitching the Infringing Book as the first and only definitive guide to the world of *Harry Potter* and Ms. Rowling plans to do her own definitive Harry Potter encyclopedia, it is clear that these two books would be in competition. The fact that there are other books concerning *Harry Potter* does not obviate this point. In this case, the ability to be the first to publish the complete, definitive guide to the Harry Potter world is extremely valuable. As a result, if RDR is allowed to publish the infringing book, the market for Ms. Rowling's book would be harmed.

7. In addition, as I mentioned above, RDR has mischaracterized these other books and their market impact. As indicated in the Supplemental Declaration of Emily Blumsack, many of these books are out of print; or either have been or will be removed from the market or significantly revised because of the enforcement efforts of Plaintiffs. Of the four remaining

books, "the End of Harry Potter?," "Facts, Fiction and Folklore in Harry Potter's World," "The Magical World of Harry Potter," and "An Unofficial Muggle's Guide to the Wizarding World," as indicated in Ms. Blumsack's declaration, none of these books cover all seven *Harry Potter* books and all of them are distinct from the Infringing Book because of their content, which includes essays, analysis, commentary and discussion. As a result, the existence of these books is irrelevant to the analysis as to whether or not there is a competitive advantage to being the first to publish a complete and definitive *Harry Potter* encyclopedia.

8. Leaving aside the issue of lost sales, I stated in my original declaration that publication of a similar work to Ms. Rowling's planned book would render Ms. Rowling's book less distinctive. Although RDR does not dispute that there can be a loss of distinctiveness in being second, RDR contends that anything that Ms. Rowling authors would be distinct because she wrote it. While I certainly believe that Ms. Rowling's planned Harry Potter encyclopedia will add new insight and information, from a marketing perspective, there is a cachet of distinctiveness that comes from simply being first. That cachet is lost to second-comers whose works may be viewed by consumers as being less distinct and more of the same. If the Infringing Book is published it will diminish the distinctiveness of Ms. Rowling's work. This loss of distinctiveness is yet another form of harm separate and apart from lost sales.

9. I understand from RDR's papers that it claims that the Infringing Book is a work of scholarship or reference, however, in documents I have reviewed from RDR's production, they have been marketing this work to children's bookstores and to children's book buyers at major retail chains. A work of scholarship or reference more often than not would not be marketed to children's book buyers nor would it appear in the children's section of any bookstore. Rather, such a work would usually appear in the reference book section of the

general bookstore. If RDR truly intends to position the Infringing Book as a work of scholarship or reference, they certainly are not marketing it as such.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 27, 2008, at New York, New York.

Respectfully submitted,

By: _____
Suzanne Murphy