UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT, INC. and J.K. ROWLING,<br><br>        Plaintiffs,<br><br>-against-<br><br>RDR BOOKS and DOES 1-10,<br><br>        Defendants. | Case No.: 07-CV-9667 (RPP) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
PLAINTIFFS WARNER BROS. ENTERTAINMENT, INC.
<u>AND J.K. ROWLING FOR PRELIMINARY INJUNCTION</u>**

Dale M. Cendali (DC 2676)
Claudia Ray (CR 4132)
Melanie Bradley (MB 0823)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY - 10036
Telephone:   (212) 326-2000
Facsimile:    (212) 326-2061

Attorneys for Plaintiffs Warner Bros.
Entertainment, Inc. and J.K. Rowling

# TABLE OF CONTENTS

Page

Preliminary Statement ........................................................................................................... 1

Argument ............................................................................................................................... 1

   A. Plaintiffs Have Shown A Likelihood of Success on the Merits on its Copyright Claim .... 1

      1. Plaintiffs Have Established a Prima Facie Case of Copyright Infringement ................. 1

      2. RDR's Book is Substantially Similar to the Series ....................................................... 2

   B. RDR Has Failed to Show a Valid Fair Use Defense ........................................................ 3

      1. Factor One: Purpose and Character of the Use ............................................................ 3

      2. Factor Two: The Nature of the Work ........................................................................... 5

      3. Factor Three: The Amount and Substantiality of the Portion Used .............................. 6

      4. Harm to the Market ....................................................................................................... 6

   C. Plaintiffs' Claims for False Endorsement and Advertising Warrant Injunctive Relief ....... 9

      1. Plaintiffs Have Established Irreparable Harm .............................................................. 9

      2. Plaintiffs Have Shown That The Balance of Hardships Favors Them ...................... 10

# TABLE OF AUTHORITIES

Page

## Cases

*Allen v. Nat'l Video Inc.*, 610 F. Supp. 612 (S.D.N.Y. 1985) .......................................................... 9

*American Brands, Inc. v. R.J. Reynolds Tobacco Co.*
413 F. Supp. 1352, 1357 (S.D.N.Y. 1976) ............................................................................ 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006) .................................................................................................. 7

*Blanch v. Koons*, 467 F. 3d 244 (9th Cir. 2006) .................................................................... 7

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) .......................................... 3, 6, 7, 8

*Castle Rock Ent., Inc. v. Carol Publ'g Group, Inc.*,
150 F.3d 132 (2d Cir. 1998) .......................................................................................... passim

*College Entrance Examination Bd. v. Pataki*,
889 F. Supp. 554 (N.D.N.Y. 1995) ........................................................................................ 3

*Columbus Rose Ltd. v. New Millennium Press*,
2002 U.S. Dist. LEXIS 9130 (S.D.N.Y. 2002) .................................................................... 10

*eBay Inc. v. Merc Exchange LLC*, 126 S. Ct. 1837 (2007) ...................................................... 9

*Feist Publ'ns v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) ...................................... 3

*Firma Melodiya v. ZYX Music*, 882 F. Supp. 1306
(S.D.N.Y. 1995) .................................................................................................................. 10

*Gilliam v. American Broad Cos. Inc.*, 538 F.2d 14 (2d Cir. 1976) .......................................... 8

*Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*,
546 U.S. 418 (2006) .............................................................................................................. 3

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985) .............................................................................................................. 6

*Herbert Rosenthal Jewelry Corp. v. Zale Corp.*,
323 F. Supp. 1234 (S.D.N.Y. 1971) .................................................................................... 10

*Kelly v. Arriba Soft Corp.*, 336 F. 3d 811 (9th Cir. 2003) ...................................................... 4

*New York Time v. Roxbury Data Interface, Inc.*,
434 F. Supp. 217 (D. N.J. 1977) ............................................................................................ 4

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
166 F.3d 65 (2d Cir. 1999) .................................................................................................... 3

*Pacific & Southern Co. v. Duncan*, 744 F.2d 1490 (11th Cir. 1984) ...................................... 6

*Paramount Pictures Corp. v. Carol Publ'g Group*,
11 F. Supp. 2d 329 (S.D.N.Y. 1998) .............................................................................. passim

*Playboy Enterprises, Inc. v. Wells*, 279 F.3d 796 (9th Cir. 2002) .......................................... 9

# TABLE OF AUTHORITIES

| | Page |
|---|---|
| *Penguin Books USA Inc. v. New Christian Church of Full Endeavor Ltd.*, 2000 U.S. Dist. LEXIS 10394 (S.D.N.Y. July 25, 2000) | 8 |
| *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) | 3, 4 |
| *R.C. Bigelow, Inc. v. Unilever N.V.*, 876 F.2d 102 (2d Cir. 1989) | 9 |
| *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490 (2d Cir. 2002) | 8 |
| *Salinger v. Random House, Inc.*, 811 F.2d 90 (2d Cir. 1987) | 1 |
| *Telebrands Corp. v. Wilton Industries, Inc.*, 983 F. Supp. 471 (S.D.N.Y. 1997) | 7 |
| *Toho Co. Ltd. v. William Morrow & Co. Ltd.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998) | 6 |
| *Tom Doherty Assocs., Inc v. Saban Entm't.*, 60 F. 3d 27 (2d Cir. 1995) | 10 |
| *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993) | passim |
| *Ty, Inc. v. Publications, Int'l Ltd.*, 292 F.3d 512 (7th Cir. 2002) | 2 |
| *U.S. v. W.T. Grant*, 345 U.S. 629 (1953) | 9 |
| *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191 (3d Cir. 2003) | 4 |
| *Wainwright Securities Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91 (2d Cir. 1977) | 10 |

## Statutes

| | |
|---|---|
| 17 U.S.C. §§ 106-107 | 6 |
| 17 U.S.C. §106 (1) | 1 |
| 17 U.S.C. § 101 | 1 |

## Other

| | |
|---|---|
| Benjamin Kaplan, *An Unhurried View of Copyright* at 100, n.61 | 2 |

## PRELIMINARY STATEMENT

RDR Books ("RDR") seeks to publish the infringing *Harry Potter* Lexicon ("Book") at the expense of Ms. Rowling, from whose novels the Book is derived. Rather than refute Plaintiffs' *prima facie* case with evidence or sound legal analysis, RDR's intellectual property counsel, the Stanford Fair Use Project, mischaracterizes the nature of the Book to advance its political agenda of "extend[ing] the boundaries of fair use." Blumsack II ¶22. But the facts and law show that the Book simply does not qualify for the fair use as it exists, and must be enjoined.

## ARGUMENT

### A. Plaintiffs Have Shown A Likelihood of Success on the Merits on its Copyright Claim

#### 1. Plaintiffs Have Established a Prima Facie Case of Copyright Infringement

Plaintiffs have established prima facie copyright infringement based on ownership of valid copyrights in the *Harry Potter* books (the "Series") and copying of them. *Castle Rock Ent., Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). RDR does not dispute the validity of Plaintiffs' copyrights and admits that the Book is based on Vander Ark's notes of the Series. Vander Ark ¶¶4-6.

Although RDR claims its copying is lawful because the Book is not a "reproduction" of the Series or a "derivative work" and, failing that, that the Book is not "substantially similar" thereto, it does not contest that the Book closely paraphrases and copies verbatim an enormous amount of Plaintiffs' protected expression. Birchall ¶¶3-10. This clearly is "reproduction" of the underlying work under the plain language of the statute. 17 U.S.C. §106 (1); *see Salinger v. Random House, Inc.*, 811 F.2d 90, 98-99 (2d Cir. 1987). It is also squarely within the Copyright Act's definition of a derivative work as "a work based upon one or more pre-existing works" (which definition RDR ignores). 17 U.S.C. § 101; Vander Ark ¶¶4-6, 45. Companion guides are derivative works where, as here, they "contain a substantial amount of material from [the

underlying work]." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.,* 996 F.2d 1366, 1373 (2d Cir. 1993); *see also Castle Rock,* 150 F.3d at 140. RDR's reliance on *Ty, Inc. v. Publications Int'l Ltd.,* where defendant's photographs of copyrighted dolls undisputedly were derivative works, is misplaced. 292 F.3d 512, 515 (7th Cir. 2002). The court there found that "textual portions of a collector's guide" (*e.g.*, release dates, retirement dates, prices) were critical and evaluative rather than a mere recasting of the underlying dolls. *Id.* at 520-521. In contrast, RDR's Book is nothing more than a recast of Ms. Rowling's original text.

RDR calls the Book a "supplementary work" supposedly outside the scope of Ms. Rowling's exclusive rights, relying solely on a 1966 academic lecture discussing possible extension of an author's exclusive rights under the 1909 Act to works such as forewards, prefaces, prologues, epilogues and bibliographies. Benjamin Kaplan, *An Unhurried View of Copyright* at 100, n.61. Leaving aside that the 1976 Act only mentions "supplementary works" in the "work made for hire" definition, the Book is not even a "supplementary work" as Professor Kaplan defines it. Nor has RDR pointed to any case law suggesting that works like it should be classified as "supplementary works" or are somehow immune from copyright claims. To the contrary, courts in this Circuit have consistently stated that this type of work is *not* immune. *See Castle Rock* 150 F.3d 132; *Twin Peaks,* 996 F.2d at 1383; *Paramount Pictures Corp. v. Carol Publ'g Group,* 11 F. Supp. 2d 329, 338 (S.D.N.Y. 1998).

### 2. **RDR's Book is Substantially Similar to the Series**

Plaintiffs' opening brief (p.10) applied the quantitative/qualitative prongs of the substantial similarity test to the Series. *See Castle Rock* at 139. The Book consists of 400 pages of material taken from the Series. Pl. Br., p.10. Its 2,437 entries use the Series' fictional facts including verbatim quotations, long plot summaries and paraphrased character descriptions, all of which is actionable. *Castle Rock* at 138; *Twin Peaks* at 1372; Johnson II ¶6; Birchall ¶¶3-10.

2

Qualitatively, the copying consists not of "unprotected facts, but creative expression." *Castle Rock*, 150 F.3d at 138-39. RDR's only response is a conclusory statement that Plaintiffs have not demonstrated substantial similarity, relying on a footnote in *Castle Rock* to the effect that a secondary work may be sufficiently transformative such that the secondary work is no longer derivative. 150 F.3d at 143 n.9. But RDR makes no showing that this theory applies here, and in fact *Castle Rock* found substantial similarity on similar facts. 150 F.3d at 141.

### B. RDR Has Failed to Show a Valid Fair Use Defense

On a preliminary injunction motion, the burdens of proof "track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006). RDR must prove it is likely to succeed on its fair use defense, which it cannot do.[1] *See College Entrance Exam. Bd. v. Pataki*, 889 F. Supp. 554, 564-65 (N.D.N.Y. 1995); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007).

#### 1. Factor One: Purpose and Character of the Use

The Book's undisputed commercial nature weighs against a finding of fair use. *See Castle Rock*, 150 F. 3d at 141. RDR's argument that the Book is "transformative" is wrong because, as Plaintiffs established in their opening brief (p.11), the Book does not create "new information, new aesthetics, new insights and understandings." *Id.* at 142. RDR's implausible claim that the Book is a "serious book" (Def. Br., p.3) filled with scholarly commentary and analysis is merely an attempt to excuse blatant infringement.

##### a. Alphabetizing is Not Transformative.[2]

Arranging a work in alphabetical order is not even sufficiently creative to render it copyrightable. *Feist Publ'ns v. Rural Telephone Svc. Co.*, 449 U.S. 340, 363 (1991); *see also*

---

[1] First Amendment issues are subsumed by the four factor fair use test, so RDR's invocation of it as a separate defense is unavailing. *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 74 (2d Cir. 1999).
[2] RDR asserts that "reference guides" in general are valuable to fiction readers, but the issue is whether the *specific* use adds something new. *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 579 (1994). Here it does not.

3

Johnson II ¶19. Reorganizing or repackaging creative works does not, alone, constitute a transformative purpose. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 200 (3d Cir. 2003); *see also Castle Rock* at 142-143.

RDR's analogy to search engines also is misplaced as the Book does not provide the combination of "organizational" value, public benefit and lack of market harm that has supported a finding of transformative purpose in the search engine context. *Perfect 10*, 508 F.3d at 1177; *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 822 (9th Cir. 2003). *Perfect 10* is distinguishable not only because of the significant public benefit of an Internet search engine as opposed to a book lifting the contents of a children's book series, but also because the court there found that potential harm to plaintiff was speculative as plaintiff claimed it *could* enter the market for downloadable "thumbnail" images, but showed no actual intent to do so. 508 F. 3d. 1166-68. Nor did it claim to compete in the search engine market. *Id.* Here, in contrast, Plaintiffs have established Ms. Rowling's intent to enter the same market as the Book and she has already published two companion books. Rowling II ¶5; Blair ¶3. The same distinctions apply with respect to *Kelly* and *New York Times v. Roxbury Data Interface, Inc.* and thus RDR's argument fails. *See Kelly*, 336 F.3d at 821; *New York Times*, 434 F. Supp. 217, 223-24 (D. N.J. 1977).

### b. No Original Commentary or Analysis.

Plaintiffs have shown that the Book is devoid of analysis, commentary, or anything else rising to the level of scholarship. Johnson I ¶¶3, 10. RDR's expert apparently agrees, only venturing that the book "*move[s] into the territory* of literary analysis" and admitting that "interpretive moves" are "*not the chief point* of the Book." Sorensen ¶32 (emphasis added). Of the Book's 2,437 entries, 2,034 simply lift information straight from the Series. Johnson II ¶6. The remainder do little more than that, merely adding adverbs such as "unfortunately," "sadly," or "possibly" to descriptions wholly derived from the Series, or simply restating the obvious

("Bandon": "presumably the home of the Bandon Banshee"). Johnson II ¶¶7, 8. Other entries simply contain facetious comments ("Junk Shop": "A shop in Diagon Alley filled with, well junk"), none of which make the Book transformative. *See Paramount* at 335; Johnson II ¶9. Such "light" analysis is not scholarly or transformative. Johnson II ¶8.

RDR accuses Plaintiffs of selectively choosing material to support their claims, but itself relies on fewer than 25 entries to "prove" sufficient original content to show fair use. However, "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Paramount*, 11 F. Supp. 2d at 335. RDR ignores the innumerable entries that simply lift Ms. Rowling's work. Birchall ¶¶3-10.; Johnson I ¶5. It also offers no cases support for the argument that the jocosity described above constitutes analysis or commentary.

### c.  No Additional Research or New Information

RDR's claims that the Book is annotated with "information" and "additional research" are equally wrong. RDR has not shown that any such material was in more than a *de minimis* number of entries. Although Vander Ark claims that he utilized "reference works," none are cited in the Book or mentioned in its bibliography. Vander Ark ¶14. The few entries that provide an extra line of definition appear to be taken verbatim from sources such as *Merriam-Webster's Online Dictionary* without attribution. True scholarship is "marked by full citation of all one's sources." Johnson II ¶15. Moreover, the Book's few uses of "etymological" references are inaccurate and demonstrate "no real linguistic understanding." *Id.* at ¶¶10-11. RDR's claim that the Book contains "significant outside research" is merely wishful thinking.

### 2.  Factor Two: The Nature of the Work

RDR does not dispute that Ms. Rowling's highly creative works are entitled to heightened protection, so this factor favors Plaintiffs. Pl. Br., p. 14. RDR's suggestion that this Court effectively ignore the remaining fair use factors if the book is found to have a

5

transformative purpose overlooks the fact that the fair use factors must "all...be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 581.

### 3. Factor Three: The Amount and Substantiality of the Portion Used

RDR admits that it uses a "significant amount" of Ms. Rowling's work in the Book, but claims that it took no more than necessary for its purposes. Def. Br., pp. 14-15. The Book, however, clearly takes the heart of the *Harry Potter* works plus everything else, even if one focused solely on entries such as "Harry Potter" and "Voldemort" that basically retell the entire Series. *See Harper & Row Pub., Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985); Birchall ¶¶3-10. The Book also quotes numerous passages, poems and songs verbatim. Birchall ¶¶5, 8. Even where it paraphrases, the Book's "description[s] conjure[ ] up vivid images that cannot be considered necessary for a critical commentary" or, similarly, for a reference guide. *Toho Co. Ltd. v. William Morrow & Co. Ltd.*, 33 F. Supp. 2d 1206, 1217 (C.D. Cal. 1998).

### 4. Factor Four: Harm to the Market

RDR must show the Book's effect upon "the potential market for or value of the copyrighted work." *See Campbell* at 590. RDR argues that the Book is not a derivative work, but as explained above, under the plain language of the Copyright Act the Book is a derivative work that occupies the market for companion guides, admittedly a natural outgrowth of a popular series. Sorensen ¶¶2-3. The exclusive right to create derivative works is subject to the sole exception of derivative works that qualify as a fair use, which the Book does not. 17 U.S.C. §§ 106-107; *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1496 (11th Cir. 1984).

RDR again argues that because the Book is purportedly transformative, it "precludes cognizable harm to any derivative market Plaintiffs may wish to exploit." Def. Br., p.17. There is no support for such a circular argument. *Bill Graham v. Dorling Kindersley* and *Blanch v. Koons* are inapposite because there, either the copyright holders were deemed unlikely to

6

compete with the defendants' works, or there was a question as to whether such a market even existed. *Koons*, 467 F. 3d 244, 258 (9th Cir. 2006); *Bill Graham*, 448 F.3d 605, 615. Here, there can be no doubt as to either consideration.³ Rowling II ¶¶5-6.

RDR also argues that Plaintiffs' purported inaction against other allegedly infringing books shows that the Book will not damage Ms. Rowling's potential market. But Plaintiffs have extensively policed the marketplace to preserve Ms. Rowling's rights. Blumsack II ¶3-7. While there are many non-infringing books about the Series, books such as the Book are few in number and have been pulled from distribution as a result of Plaintiffs' efforts.⁴ *Id.*; Murphy II ¶7.

As explained in Plaintiffs' opening brief, the Book is a significant market threat to Ms. Rowling's planned companion guide. Pl. Br., pp.15-17. It would divert sales of her own encyclopedia as many consumers who purchased the Book would find it unnecessary, or would not have the means, to also purchase Ms. Rowling's encyclopedia. *See Telebrands Corp. v. Wilton Industries, Inc.*, 983 F. Supp. 471, 476 (S.D.N.Y. 1997) ("once purchased, the consumer is unlikely to purchase a second can opener"); Rowling II ¶8; Murphy II ¶3; Landes II ¶¶12-14. RDR admits as much. Blumsack II ¶¶9-10. Nor does RDR refute that the Book would result in lost licensing revenue. *Campbell*, 510 U.S. at 593; *Bill Graham*, 448 F.3d at 614; Landes II ¶26. It thus constitutes a potential market substitution for Ms. Rowling's encyclopedia, precisely the kind of harm that weighs against fair use. *Campbell* at 593.

The Book also would usurp Plaintiffs' right to publish the first encyclopedia covering the whole Series. Landes II ¶¶23-24; Murphy II ¶¶ 5-7. RDR does not dispute the advantage of being first, which it sought for itself. Blumsack II ¶10; Murphy II ¶¶5-6. It argues that injury to

---

³ RDR's unsupported assertion that Ms. Rowling does not intend to write her own encyclopedia (even Vander Ark admits she does) or at least not soon, misstates the relevant inquiry which is whether the market for companion guides is one that she would generally develop. *See Castle Rock*, 150 F.3d at 145.
⁴ That an "occasional infringement slips through a copyright holder's surveillance net is insufficient to establish the intent required to find abandonment." *Paramount* at 337.

7

Ms. Rowling has already occurred due to the publication of other similar books. But as RDR's own marketing materials show, it is positioning the Book as more comprehensive than existing books. Blumsack II ¶9. The books RDR cites are different in scope, have been or are the subject of Plaintiffs' policing efforts, or had meager sales prior to being discontinued. Blumsack II ¶¶3-7. Ms. Rowling may still be the first mover. Landes II ¶22; Murphy II ¶7.

The market harm inquiry also extends to "whether unrestricted and widespread conduct of the sort engaged in" by RDR "would result in a substantially adverse impact on the potential market" for the original and derivative works. *Campbell* at 590 (citation omitted). Publication of the Book would signal that others may also free ride off of Ms. Rowling's works, flooding the market with copycat works and likely diminishing her sales. Landes II ¶13; Murphy II ¶3.

Faced with these facts and controlling law, RDR repeatedly refers to the existence of the *Lexicon* Website (the "Website"), seemingly to obliquely suggest a waiver or implied license argument. The law is clear that these doctrines do not help RDR.[5] Nor can RDR successfully argue that the Website already scoops Ms. Rowling's encyclopedia. The Website is not a substitute for the Book. Landes II ¶14. The Website cannot be purchased and it certainly cannot be given as a gift. In fact, RDR recognized the Book as filling a different market than the Website. Blumsack II ¶12. Fans of the Series have recognized this difference as well. Blumsack II ¶¶17-18. That RDR chose to publish the Book in the first place proves that even

---

[5] Waiver requires a showing that Ms. Rowling "relinquished a right with both knowledge of the existence of the right and an intent to relinquish it." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor*, Ltd., 2000 U.S. Dist. LEXIS 10394, *60 (S.D.N.Y. July 25, 2000). The award Ms. Rowling gave the Website and the Klein note speak only to Plaintiffs' appreciation of a free fan site, not to any supposed intent to relinquish rights to make an encyclopedia. Rowling II ¶¶3-4, 12-13; Klein II ¶3. Nor does Plaintiffs' support of such sites show approval of the for-profit Book. Even "[o]ne who obtains permission to use a copyrighted [work] in the production of a derivative work . . . may not exceed the specific purpose for which permission was granted." *Gilliam v. American Broad. Cos. Inc.*, 538 F.2d 14 (2d Cir. 1976). A contrary rule would force authors to protect their creations far more rigorously, to the detriment of all. Rowling II ¶3. And as this Circuit has recognized, unless particular contract language indicates otherwise, even a license to publish a physical book does not imply permission to publish the same work in electronic format. *See Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491-92 (2d Cir. 2002).

8

RDR does not view the Website as a substitute for a real book.

C.  **Plaintiffs' Claims for False Endorsement and Advertising Warrant Injunctive Relief**

RDR argues that its willingness to remove Ms. Rowling's quote from the Book's cover renders Plaintiffs' Lanham Act claims moot and bars injunctive relief. But an injunction may issue despite a defendant's voluntary cessation of illegal activity where there is a cognizable danger that its conduct will be repeated. *U.S. v. W.T. Grant*, 345 U.S. 629, 632-33 (1953). Such is the case here as RDR's "promise" to remove the quote came only in response to Plaintiffs' opening brief. *See R.C. Bigelow, Inc. v. Unilever N.V.*, 876 F.2d 102, 106-07 (2d Cir. 1989).

Moreover, a significant number of consumers believe from the quote that Ms. Rowling endorses the Book.[6] Helfgott ¶2. RDR does not dispute that misuse of a celebrity's name is actionable false endorsement or advertising, instead arguing the quote is literally true and therefore not actionable. This misstates the law[7] and ignores the fact that RDR has used an old quote about the Website to suggest falsely Ms. Rowling endorses a book she opposes. RDR's attempt to distinguish the cases cited by Plaintiffs is unavailing,[8] as is RDR's reliance on *Playboy Enterprises, Inc. v. Wells*, 279 F.3d 796 (9th Cir. 2002).[9]

D.  **Plaintiffs Have Established Irreparable Harm**

Plaintiffs have shown that they will suffer irreparable injury absent injunctive relief.[10]

---

[6] RDR also claims, without any legal support or expert testimony, that Dr. Helfgott's survey participants were "invited to ignore" the disclaimers appearing on the cover. In fact, participants were asked to review the *entire* cover of the Book as if they were making a purchasing decision and then asked about the quote. Helfgott Decl. ¶2. Tellingly, RDR has not submitted its own survey.

[7] False endorsement requires only that the quote "has the tendency to mislead or confuse consumers." *American Brands, Inc. v. R.J. Reynolds Tobacco Co.* 413 F. Supp. 1352, 1357 (S.D.N.Y. 1976).

[8] RDR argues that *Allen v. National Video, Inc.* is distinguishable because it involves a celebrity look-alike rather than a name and quote. This is immaterial as both constitute false endorsement. 610 F. Supp. 612 (S.D.N.Y. 1985).

[9] Unlike here, the defendant in *Playboy* made clear that the "Playmate of the Year" title had been awarded in the past and thus the use did not suggest *current* sponsorship or endorsement by plaintiff. *Id.* at 803-04. Nor does *Playboy* involve a situation such as this where Ms. Rowling's quote about the Website was used in connection with the Book, which is strikingly different in content and purpose.

[10] *eBay, Inc. v. MercExchange, L.L.C.* does not support RDR's argument that Plaintiffs have not met their burden of establishing irreparable harm. 126 S. Ct. 1837 (2007). *eBay* did not overturn this Circuit's longstanding rebuttable

9

First, publication of the Book would divert sales from Ms. Rowling's own encyclopedia. *See Wainwright Sec. Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977); Landes II ¶¶12-14; Murphy I ¶3. It would also usurp Plaintiffs' right to publish the first complete encyclopedia. *Herbert Rosenthal Jewelry Corp. v. Zale Corp.*, 323 F. Supp. 1234, 1238 (S.D.N.Y. 1971); Landes II ¶23, Murphy II ¶5. Plaintiffs would also be unable to enforce their exclusive rights. *See Tom Doherty Assocs., Inc. v. Saban Entm't*, 60 F. 3d 27, 38 (2d Cir. 1995). The Book's poor quality also causes irreparable harm. *Firma Melodiya v. ZYX Music*, 882 F. Supp. 1306, 1315 (S.D.N.Y. 1995). And irreparable harm will result if RDR is not enjoined from making use of Ms. Rowling's name and quote to mislead consumers. *See Columbus Rose Ltd. v. New Millennium Press*, 2002 U.S. Dist. LEXIS 9130, *31 (S.D.N.Y. 2002).

### E. **Plaintiffs Have Shown That The Balance of Hardships Favors Them**

As shown above, the irreparable harm to Plaintiffs strikingly outweighs any potential harm suffered by RDR. In fact, RDR concedes this point as it does not identify *any* potential hardships it would suffer if a preliminary injunction is issued.

Dated: February 27, 2008

Respectfully submitted,

*/s/ Dale M. Cendali*
Dale M. Cendali (DC 2676)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
dcendali@omm.com

---

presumption of irreparable injury upon a finding of likelihood of success on the merits in copyright and trademark cases. Regardless, Plaintiffs have not relied on a presumption and instead have specifically identified numerous harms emanating from RDR's infringement.

# CERTIFICATE OF SERVICE

      I, Emily Blumsack, hereby certify under penalty of perjury that on this 27th day of February 2008, I caused a true and correct copy of Plaintiffs' Reply Memorandum of Law in Support of Its Motion for a Preliminary Injunction and accompanying Declarations, to be served electronically via e-mail upon the following:

> David Saul Hammer, Esq.
> Law Office of David Saul Hammer
> 99 Park Avenue, Suite 1600
> New York, New York 10016
> Telephone: (212) 941-8118
> Facsimile: (212) 557-0565
> daveyh@aol.com

> Anthony Falzone
> Stanford Law School
> Center for Internet and Society
> 559 Nathan Abbott Way
> Stanford, California 94305-8610
> Telephone: (650) 736-9050
> Facsimile: (650) 723-4426
> anthony.falzone@stanford.edu

February 27, 2008
New York, New York

_____
Emily B. Blumsack