UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WARNER BROS. ENTERTAINMENT, INC. and
J.K. ROWLING,

              Plaintiffs,

      -against-

RDR BOOKS and DOES 1-10,

            Defendants.

Case No.: 07-CV-9667 (RPP)

**PLAINTIFFS' STATEMENT OF CLAIMS**

Dale M. Cendali (DC 2676)
Claudia Ray (CR 4132)
Melanie Bradley (MB 0823)
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY - 10036
Telephone:    (212) 326-2000
Facsimile:    (212) 326-2061

Attorneys for Plaintiffs Warner Bros.
Entertainment, Inc. and J.K. Rowling

1

Dockets.Justia.com

Pursuant to the Individual Practice Rules of the Honorable Robert P. Patterson, Jr., plaintiffs Warner Bros. Entertainment, Inc. and J.K. Rowling (collectively, "Plaintiffs") respectfully submit this statements of the elements of their claims against defendant RDR Books ("Defendant" or "RDR"), together with a summary of the facts relied upon to establish each claim. Plaintiffs also set forth herein the elements of each affirmative defense alleged by Defendant together with a summary of the facts relied upon to rebut each such defense.

## I.    Count One - Copyright Infringement.

Plaintiffs will present documentary evidence and testimony to show that Defendant's planned *Lexicon* book constitutes copyright infringement under 17 U.S.C. §§ 101 et seq. of the Copyright Act. In order to establish copyright infringement, Plaintiffs must prove ownership of a valid, existing copyright and Defendant's unauthorized copying of their copyrighted material. *See Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir. 1977). Both elements are met in this case.

### A.    Plaintiffs Have Submitted Uncontested Evidence Showing Ownership of Valid Copyrights.

Registration of a copyright with the U.S. Copyright Office is *prima facie* evidence of the ownership. *See* 17 U.S.C. § 410(c); *see also Novelty Textile Mills*, 558 F.2d at 1092 n.1. The evidence will show that Plaintiffs own valid United States copyright registrations for the *Harry Potter* books, the two Companion Books and the Films (collectively, the "*Harry Potter* Works"). Ms. Rowling also owns copyrights in the fictional characters, events, places, and things that she has created and developed in the *Harry Potter* Works and other related works. *See Castle Rock Entm't v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 139 (fictional characters and facts created by *Seinfeld* writers were protectable expression); *Paramount Pictures Corp. v. Carol Publ'g Group*, 11 F. Supp. 2d 329 (S.D.N.Y. 1998); *see also New Line Cinema Corp. v. Bertlesman Music*

*Group, Inc.*, 693 F. Supp. 1517, 1521 n.5 (S.D.N.Y. 1988); *Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 519 F. Supp. 388, 391 (S.D.N.Y. 1981).

    **B.**     **The Evidence Will Show that Defendant's Book Is Admittedly Based on Plaintiffs' Works and Is Substantially Similar to Those Works, Satisfying the Second Element of a Copyright Infringement Claim**

Plaintiffs will also establish that Defendant has copied Plaintiffs' work. Plaintiffs may establish copying either by direct evidence or by showing that the Defendant had access to Plaintiffs' work and by demonstrating that the two works are substantially similar. *Castle Rock*, 150 F.3d at 137; *Twin Peaks Productions, Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993); *Paramount*, 11 F. Supp. 2d at 332-33; *Castle Rock Entm't v. Carol Publ'g Group*, 955 F. Supp. 260, 264 (S.D.N.Y. 1997), *aff'd* 150 F.3d 132 (2d Cir. 1998). Plaintiffs can show that both factors are met here.

First, Plaintiffs will show evidence of direct copying. Plaintiffs' documentary evidence and testimony will demonstrate that the *Lexicon's* author, Mr. Steven Vander Ark, freely admits that the *Lexicon* is based on his detailed notes on the *Harry Potter* series. *See Paramount*, 11 F. Supp. 2d at 332 (copying inquiry unnecessary where book took quotations from *Star Trek* television series and told its fictional "history"); *Castle Rock*, 955 F. Supp. at 264 (trivia book copied material from *Seinfeld* television series).

Second, while it is not necessary to reach this point as the direct evidence of copying is clear, Plaintiffs will also establish that Defendant admittedly had access to Plaintiffs' copyrighted works, and that its work is substantially similar to those works. Works are substantially similar if: (1) an objective comparison on an element-by-element basis indicates that the original elements of the plaintiffs' registered copyrighted work and of the defendant's work are substantially similar; and (2) a subjective comparison of the total concept and feel of plaintiffs' registered copyrighted work and defendant's work indicates that the works are

substantially similar. *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997).

The evidence will show that the *Lexicon* has appropriated some 400 pages of material directly from the *Harry Potter* Works by, among other things, quoting, paraphrasing, summarizing, and abridging vast amounts of material from Plaintiffs' copyrighted works, and clearly "has crossed the *de minimis* threshold." *Castle Rock*, 150 F.3d at 138 (copying 643 fragments from an 84-episode tv series was actionable); *see also Twin Peaks*, 996 F.2d at 1372 (2d Cir. 1993) (taking 89 lines of dialogue for companion book was actionable).

Documentary evidence and testimony also will show that the *Lexicon* copies Plaintiffs' copyrights works in a qualitative sense, as the entire book is based on Ms. Rowling's fictional facts and world. Such wholesale copying of protected expression is qualitatively significant. *Castle Rock*, 150 F.3d at 138; *see also Twin Peaks*, 996 F.2d at 1372-73; *Paramount*, 11 F. Supp. 2d at 332-33. Plaintiffs therefore will also establish the second element of copyright infringement.

## II.     Defendant's Affirmative Defenses Are Unavailing

### A.      Defendant's Copyright Infringement Is Not A "Fair Use"

In its Answer, Defendant has asserted as an affirmative defense that its copying of Plaintiffs' works is permitted as a fair use. But the evidence will show that Defendant cannot meet its burden to establish this defense because, under well-established Second Circuit law, repackaging "fictional facts" from another's creative work is *not* a fair use. *Castle Rock*, 150 F.3d at 142-43, 144 (*Seinfeld* trivia book containing numerous fictional facts and references not fair use); *Paramount*, 11 F. Supp. 2d at 335 (book that merely recounted television series' fictional history and characters not fair use); *Twin Peaks*, 996 F.2d at 1375, 1376-77 (companion book retelling fictional "plot details" from *Twin Peaks* was not fair use).

The fair use doctrine permits limited unauthorized use for purposes such as criticism,

4

comment, news, reporting, teaching, scholarship, or research of a copyrighted work. 17 U.S.C.

§107; *Twin Peaks*, 996 F.2d at 1373 (fair use doctrine allows an author to use a limited amount

of copyrighted material under some circumstances). The Defendant has the burden of proving

fair use. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); College *Entrance*

*Exam. Bd. v. Pataki*, 889 F. Supp. 554, 564-65 (N.D.N.Y. 1995). In determining whether a use

is "fair," a court must consider four factors, none of which is solely determinative: (1) the

purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and

substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the

effect of the use upon the potential market for or value of the copyrighted work. *Campbell*, 510

U.S. at 576-77; 17 U.S.C. §107. The evidence will show that all four factors favor Plaintiffs in

this case.

### 1. Because Defendant's Use of the Copyrighted Material is a For a Commercial, Non-Transformative Use, The First Factor—Purpose and Character of the Use—Favors Plaintiffs.

To determine the purpose and character of a given use, courts consider (i) whether the

infringing work is commercial in nature; and (ii) whether it is transformative and therefore "adds

something new, with a further purpose or different character, altering the first with new

expression, meaning, or message." *Campbell*, 510 U.S. at 578-579.

Plaintiffs' evidence will show that the *Lexicon*, a $24.95 mass market book, is clearly

commercial. Plaintiffs will also demonstrate that the *Lexicon* is not transformative because it

does nothing more than "repackage [the original work] to entertain [the original work's]

viewers." *Castle Rock*, 150 F.3d at 142 (finding trivia book non-transformative). Documentary

evidence and testimony will show that the *Lexicon* does not use the *Harry Potter* books as raw

material "in the creation of new information, new aesthetics, new insights and understandings,"

instead simply copying it wholesale.

5

Plaintiffs also will show that Defendant's use of Ms. Rowling's protected expression "consists primarily of summarizing in great detail" the intensely creative fictional world of *Harry Potter*, including plots, characters and elements of the *Harry Potter* series and "goes far beyond merely identifying their basic outline for the transformative purposes of comment or criticism." *Twin Peaks*, 996 F.2d at 1375-76 (detailed plot summaries in defendant's book were infringing abridgements and not fair use).

Even where "the structure of the book differs from the dramatic linear format of the [underlying] Properties," that is not enough to give rise to a transformative purpose. *Paramount*, 11 F. Supp. 2d at 332, 335 (book about *Star Trek* phenomenon consisted primarily of material taken from the various *Star Trek* properties and was insufficiently transformative despite humorous comments interspersed within plot summaries). Courts of other circuits agree. *See, e.g., Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 520 (7th Cir. 2002) (collector's guide for Beanie Baby dolls that contained only minimal accompanying commentary did not appear to constitute fair use), *on remand*, 333 F. Supp. 2d 705, 719 (N.D. Ill. 2004) (guide book was not transformative and not fair use); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998) (rejecting fair use claim for a 227-page compendium containing detailed plot summaries in addition to commentary, critique, trivia and pictures from the *Godzilla* films and finding use non-transformative). Here, the evidence will show that the *Lexicon* contains all of the elements with which to reconstruct the "heart" (not to mention the minutiae) of Ms. Rowling's story.

2. **Because Fictional Works Are Entitled To The Strongest Protection Under Copyright Law, The Second Factor—Nature of the Copyrighted Work—Favors the Plaintiffs.**

The second factor, nature of the copyrighted work, recognizes that "some works are closer to the core of intended copyright protection than others," and considers whether the

copyrighted work is expressive or creative and whether the work is published. *Castle Rock*, 150

F.3d at 143. Here, Plaintiffs will present evidence to demonstrate that the *Harry Potter* works

are clearly creative fictional works entitled to the strongest protection, particularly where the

secondary work is "at best minimally transformative." *Id.* at 144; *see also Twin Peaks*, 996 F.2d

at 1376 (second factor "must favor a creative and fictional work, no matter how successful.");

*Paramount*, 11 F. Supp. 2d at 336 (resolving the factor in a single sentence because the

determination was "straight forward").

3. **Because the Book Takes Every Element of the *Harry Potter* Works, The Third Factor—The Amount and Substantiality of the Portion Used—Favors The Plaintiffs.**

The third factor requires an examination of whether the amount copied exceeds that

necessary to further the purpose and character of the new work. *Campbell*, 510 U.S. at 586;

*Castle Rock*, 150 F.3d at 144 (extensive use of underlying work suggested entertainment purpose

rather than commentary). Here, Plaintiffs will demonstrate that the *Lexicon* takes every element

and character from the series and puts them in alphabetical order without any significant

analysis, commentary or reference to any other work. Documentary evidence and testimony will

show that entries for key characters "consist of long, detailed prose summarizing extensive

portions of the plot" of the series, far exceeding what would be necessary to comment on or

analyze the *Harry Potter* works. The evidence will show that other entries extensively

paraphrase and quote lengthy portions verbatim, far beyond that necessary to create a

legitimately transformative work. *See Castle Rock*, 150 F.3d at 144; *Twin Peaks Prods.*, 996

F.2d at 1376-77 (third factor favored plaintiffs where companion book "provides synopses for

several episodes, lifting many parts verbatim from the script"); *see also Toho Co. Ltd. v. William*

*Morrow & Co. Ltd.*, 33 F. Supp. 2d 1206, 1217 (C.D. Cal. 1998) (unauthorized *Godzilla*

compendium not fair use; even some commentary on films did not justify pages and pages of plot summary).

### 4. Because the Book Will Harm the Market for Rowling's Planned Encyclopedia, the Fourth Factor—Harm to the Market—Favors the Plaintiffs.

The fourth factor of the fair use defense requires the Court to consider "the current and potential market" for derivative works in addition to the primary market for the original work itself, as well as whether "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (citations omitted). Plaintiffs will demonstrate that Ms. Rowling has made clear that she affirmatively intends to fill the market niche for a *Harry Potter* encyclopedia and, as with her previous two companion guides, donate all profits to charity. *Twin Peaks*, 996 F.2d at 1377; *see also Toho*, 33 F. Supp. 2d at 1217 ("Because [defendant's] book and [plaintiff's licensee's] book are attempting to capitalize on this market, there would be an adverse effect on the potential market for [plaintiff]"); *Roy Export Co. Estab. v. Columbia Broad. Sys. Inc.*, 503 F. Supp. 1137, 1146 (S.D.N.Y. 1980) (value of author's exclusive right to make derivative work "would certainly seem to be diminished by the ability of another to use the copyrighted work in order to compete at will with the derivative work"). Plaintiffs also will show that publication of the *Lexicon* would harm the market for Plaintiffs' works. *See Telebrands Corp. v. Wilton Industries, Inc.*, 983 F. Supp. 471, 476 (S.D.N.Y. 1997) ("[O]nce purchased, the consumer is unlikely to purchase a second can opener.").

### 5. Defendant's Bad Faith Precludes a Finding of Fair Use

Finally, in addition to the four statutory factors, courts consider whether a defendant has run afoul of principles of equity, "presuppos[ing] good faith and fair dealing." *Roy*, 503 F. Supp. at 1146-47. Here, Plaintiffs will demonstrate that Defendant and Mr. Vander Ark conducted

their entire enterprise in clandestine fashion. The evidence will show that they knew Ms. Rowling intended to write her own encyclopedia, and that Mr. Vander Ark even told other fans that writing an encyclopedia without permission would be a violation of her rights. The evidence will also show that he did so anyway after first being indemnified by Defendant, and that Defendant then began its plan to market the book under the radar to publishers who do not publish the *Harry Potter* books, and, after Plaintiffs got wind of Defendant's plans, to stall Plaintiffs while continuing to market the book and to refuse to produce a copy of the manuscript.

**B.** **Defendant Cannot Prove Copyright Misuse Because Plaintiffs Have Not Attempted To Improperly Extend The Scope of Their Copyrights.**

Although copyright misuse has not been established in this Circuit, *see, e.g., Shady Records, Inc. v. Source Enter., Inc.*, 2004 U.S. Dist. LEXIS 26143, *50 (S.D.N.Y. Jan. 3, 2005), even assuming that such a defense is valid in this Circuit, Defendant cannot establish copyright misuse by Plaintiffs. Copyright misuse is found "where [the copyright owner] has impermissibly extended the copyright monopoly in a manner which constitutes an unreasonable restraint on trade." *Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 295 (S.D.N.Y. 1991); Nimmer on Copyright § 13.09 (2007). Defendant must prove that Plaintiffs "used [their] legal monopoly to assert economic control over uncopyrighted products." *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 1998 U.S. Dist. LEXIS 6806 (S.D.N.Y. 1998); *see, e.g., Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 972 (4th Cir. 1990) (finding copyright misuse where Lasercomb had included in its standard licensing agreement clauses which prevented the licensee from participating in the creation of computer-assisted die-making software); *DSC Communications Corp. v. DGI Technologies Inc.*, 81 F.3d 597, 600-01 (5th Cir. 1996) (finding copyright misuse where a copyright holder attempted to leverage its monopoly over a particular expression "in patent-like powers over a general idea").

1. **Because The Policing Activity On Which Defendant Bases Its Copyright Misuse Defense Is Protected Under The *Noerr-Pennington* Doctrine, The Defense Must Fail.**

Under a series of cases referred to as the *Noerr-Pennington* doctrine, the Supreme Court has shielded litigants from claims relating to the filing or prosecution of litigation. *Eastern Railroad Presidents Conference v. Noerr*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965); *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002). *Noerr-Pennington* also encompasses concerted efforts incident to litigation, such as pre-litigation cease and desist letters. *Primetime 24 Joint Ventures v. Nat'l Broad. Co.*, 219 F.3d 92, 100 (2d Cir. 2000). The *Noerr-Pennington* doctrine bars affirmative defenses based on such activities. *See Estee Lauder, Inc. v. The Fragrance counter, Inc.*, 189 F.R.D. 269, 273 (S.D.N.Y. 1999).

Under the *Noerr-Pennington* doctrine all litigation other than "sham litigation" is shielded. In order to demonstrate that litigation was a "sham," Defendant must demonstrate that: (1) the suit was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) there was subjective intent to use the litigation to interfere with the business relationships of a competitor. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-62 (1993). Here, the evidence will show that Plaintiffs' policing activities, including the sending of cease and desist letters citing to this Circuit's prior cases in this area and the initiation of this and other lawsuits, were not only not objectively baseless, they were in fact objectively reasonable efforts to enforce valid copyrights.

2. **Even Without Application of the *Noerr-Pennington* Doctrine, Defendant's Copyright Misuse Defense Still Will Fail.**

Even if the *Noerr-Pennington* doctrine did not apply, which it does, documentary evidence and testimony will show that Defendant's copyright misuse defense fails because

enforcing a valid copyright, without more, is not evidence of copyright misuse. *Interscope Records V. Kimmel*, 2007 U.S. Dist. LEXIS 43966, *17 n.3 (E.D.N.Y. June 18, 2007); *Orth-O-Vision, Inc. v. Home Box Office*, 474 F. Supp. 672 686-87 (S.D.N.Y. 1979) (bringing a copyright infringement suit based on defendant's unauthorized transmission of the copyright owner's audiovisual works constituted a good faith effort to enforce copyrights); *Shady Records, Inc. v. Source Enter., Inc.*, 2004 U.S. Dist. LEXIS 26143, *49-52 (S.D.N.Y. Jan. 3, 2005) (by seeking to prevent the defendant from reproducing plaintiff's copyrighted works, plaintiff did no more than it was entitled to do under the Copyright Act). Here, the evidence will show that Plaintiffs' long-standing policing efforts constitute the valid enforcement of their rights as provided by the Copyright Act. Moreover, the evidence will show that many, many *Harry Potter*-related books currently exist on the market, including several other companion guides that do not plunder as much of Ms. Rowling's copyrighted material and add far more commentary and analysis.

C.      **Defendant Cannot Demonstrate That Plaintiffs Have Unclean Hands.**

The defense of unclean hands requires that the plaintiffs "either participated in the acts of infringement or that plaintiffs committed some 'transgression' such as fraud upon the Copyright Office resulting in harm or prejudice to the defendant." *Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 296 (S.D.N.Y. 1991); Nimmer on Copyright § 13.09[B]. The Second Circuit has found unclean hands "where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is directly related to the subject matter in litigation and has injured the party attempting to invoke the doctrine." *PenneCom, B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 1988). The defense is rarely recognized in copyright actions. *Penguin Books*, 2000 WL 1028634, *19 (quoting *Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Services*, 746 F. Supp. 320, 329 (S.D.N.Y. 1990).

In this case, documentary evidence and testimony will show that Plaintiffs have not

committed any "transgression" or otherwise engaged in any unconscionable conduct that has in any way harmed Defendant. On the contrary, the evidence will show not only that Plaintiffs have gone out of their way to use their copyrighted works to benefit charitable endeavors, but they have also given wide latitude to fans of the series on the Internet.

## III. Plaintiffs Are Entitled To An Injunction Preventing Defendant's Publication of the Book.

A permanent injunction should issue to prevent or restrain the infringement of a copyright and is appropriate where money damages would be inadequate. 17 U.S.C. § 502; *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981). Courts routinely hold that copyright infringement gives rise to a presumption of irreparable injury. *See, e.g., ABKCO Music*, 96 F.3d at 66 (a *prima facie* case of copyright infringement supports a presumption of irreparable harm). As Plaintiffs will demonstrate a likelihood of success on the merits of their copyright infringement claims, irreparable injury may be presumed.

In the context of a patent claim, the Supreme Court has applied the traditional principles of equity in determining whether a permanent injunction would issue, including whether the plaintiff has shown that: (1) it would suffer irreparable injury absent relief; (2) the remedies available at law are inadequate to compensate for the injury, (3) considering the balance of the hardships, a remedy in equity is warranted, and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1839 (2007). Even assuming that this same standard applies in the context of copyright law, the evidence will show that a permanent injunction is warranted.

### A. If Defendant's Book Is Published, Plaintiffs Will Suffer Irreparable Injury.

Even beyond the presumption of injury in intellectual property cases, the evidence will

show that Plaintiffs will suffer irreparable harm absent an injunction. First, the evidence will

show that the prospect of having to compete with, and possibly be accused of having infringed,

her own words in the form of the *Lexicon* has had and would continue to have a substantial,

negative impact on Ms. Rowling's ability and incentive as an author to create additional

copyrighted works. In addition, the evidence will show that publication of the *Lexicon* would

divert sales from Ms. Rowling's own encyclopedia, to an unknowable degree. *See Wainwright*

*Sec. Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94 (2d Cir. 1977) (finding irreparable

injury where publication of extracts of plaintiff's copyrighted materials might materially reduce

the demand for plaintiff's services); *Register.com v. Domain Registry of America, Inc.*, 2002

U.S. Dist. LEXIS 24795, *57 (S.D.N.Y. 2002) (finding irreparable harm where defendant's

conduct would cause lost sales).

The evidence also will show that publication of the *Lexicon* would usurp Plaintiffs' right

to publish the first complete encyclopedia. *Herbert Rosenthal Jewelry Corp. v. Zale Corp.*, 323

F. Supp. 1234, 1238 (S.D.N.Y. 1971) (irreparable harm where defendant's infringing activity

could adversely affect plaintiff's market position).

The evidence also will show that publication of the *Lexicon* would impair Plaintiffs'

ability to license their exclusive rights. *See Tom Doherty Assocs., Inc. v. Saban Entm't*, 60 F. 3d 27,

38 (2d Cir. 1995) (irreparable harm where the defendant's conduct threatened plaintiff's exclusive

license rights). Plaintiffs will also present evidence showing that the *Lexicon's* poor quality

would cause irreparable harm. *Firma Melodiya v. ZYX Music*, 882 F. Supp. 1306, 1315 (S.D.N.Y.

1995) ("inferior quality" of defendants' music compact discs and packaging would cause plaintiffs to

"suffer irreparable damage to their reputation").

Finally, Plaintiffs also will demonstrate that allowing Defendant to proceed would open

the flood gates to other similar works, undermining Plaintiffs' long-term licensing and policing strategy.

**B.    Monetary Damages are Inadequate to Compensate Plaintiffs.**

In this case, Plaintiffs will demonstrate that the harms described above, including the harm that would result from Defendant's continuing infringement in addition to Ms. Rowling's loss of her right to have exclusive control over derivative works and the injury to the quality of her works, cannot be compensated by money damages. *See Lauratex Textile Corp.*, 519 F. Supp. at 732. Moreover, the evidence will show that potential lost sales that Plaintiffs would suffer are impossible to quantify.

**C.    Plaintiffs Have Shown That The Balance of Hardships Favors Them.**

The evidence will show that the irreparable harm to Plaintiffs outweighs any potential harm suffered by Defendant.

The evidence will show that the only harm Defendant would suffer if an injunction issued would be lost sales, as Defendant has not yet even finished setting the type on the *Lexicon*, much less expended much money on printing or marketing it, and has no contractual obligation to pay Mr. Vander Ark any advance. The evidence will also show that the *Lexicon* is not the only work that Defendant sells. However, even if it were, as Judge Hand made clear, injunctive relief would still be appropriate in light of Defendant's deliberately infringing conduct. *See My-T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934) (Hand, J.) ("advantages built upon a deliberately plagiarized makeup do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed"); *see also Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 612 (1st Cir. 1988) (internal quotations and citations omitted) ("[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . .

Such considerations apply even to a business which is exclusively based on an infringing activity and which would be virtually destroyed by a preliminary injunction."); *Apple Computer Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983), cert. dismissed, 464 U.S. 1033 (1984) (internal citations omitted) (if defendant's reliance on infringing activity for survival barred issuance of injunction, "a knowing infringer would be permitted to construct its business around its infringement, a result we cannot condone.").

**D.    Issuing a Permanent Injunction Would Serve the Public Interest.**

The evidence will show that issuing an injunction would benefit the public by protecting individual copyright holders, incentivizing the creation of original works (including companion guides that do more than just copy the creative works of others) and serving the goals of the Copyright Act as well as protecting the public from substandard, unauthorized, infringing works. The evidence also will show that in addition to the harm to Ms. Rowling, the publication of the Lexicon would impact other authors, undermining their ability to use and license their own works.

Dated: April 7, 2008

Respectfully submitted:

Dale M. Cendali (DC 2676)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
dcendali@omm.com